BUTLER v. FAYERWEATHER et al.

(Circuit Court of Appeals, Second Circuit. January 5, 1899.)

No. 115.

1. WRIT OF ERROR—FINAL ORDERS—COMMITMENT FOR CONTEMPT.

An order in an equity cause committing a witness, not a party to the suit, for contempt in refusing to testify, is final, and reviewable on a writ of error sued out by the witness before final decree in the cause.

2. FEDERAL COURTS—FOLLOWING STATE PRACTICE—EVIDENCE.

Under Rev. St. U. S. § 858, providing that the laws of the state in which the court is held are the rules of decision for the courts of the United States as to the competency of witnesses, Code Civ. Proc. N. Y. §§ 835, 836, in effect prohibiting the disclosure of instructions given by a testator to an attorney employed to draw the will, is binding on federal courts sitting in New York.

3. WITNESSES—ATTORNEYS—PRIVILEGED COMMUNICATIONS.

Code Civ. Proc. N. Y. §§ 835, 836, provide that an attorney shall not disclose a communication made to him by a client, or the advice thereon, in the course of his professional employment, unless the privilege is "expressly waived upon the trial" by the client, but that he may testify "in the probate of a will * * * as to its preparation and execution," if he is one of the subscribing witnesses. *Held*, that an attorney who has prepared a codicil alleged to have been executed and published by the client, and afterwards destroyed by a third person, cannot be required to disclose its contents, and whether it was signed in presence of attesting witnesses so as to constitute a publication, the attorney not having attested the codicil.

4. SAME—FRAUD.

The fact that the codicil was destroyed fraudulently, and by an executor named in a subsequent codicil, does not alter the case.

5. SAME—EXTRANEOUS EVIDENCE OF COMMUNICATIONS.

Nor is it material that witnesses other than the attorney were present when the codicil is alleged to have been executed and published, though they heard all that took place, and were aware of the contents of the instrument.

In Error to the Circuit Court of the United States for the Southern District of New York.

Joseph H. Choate, for plaintiff in error.
Roger M. Sherman, for defendants in error.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error to review an order committing the plaintiff in error for contempt, in default of answering certain questions propounded to him as a witness in an equity cause pending in the court in which the order was made. The witness was not a party to the cause, and based his refusal to answer the questions upon the ground of privilege; he being an attorney, and asserting the questions to call for professional communications of his client.

It is insisted for the defendant in error that the order cannot be reviewed upon a writ of error, but only upon appeal from a final decree in the cause in which it was made. This court, in Gould v. Sessions, 35 U. S. App. 281, 14 C. C. A. 366, and 67 Fed. 163, held a contempt of court to be a criminal offense, and an order imposing a fine therefor to be a judgment reviewable by a writ of error at the instance of the party aggrieved. It was determined in Crosby's Case, 3 Wils. 188, and declared by the supreme court in Ex parte Kearney, 7 Wheat. 38, that an adjudication for a contempt was a conviction, and a commitment in consequence an execution. In New Orleans v. Steamship Co., 20 Wall. 392, the supreme court said:

"Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing."

In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, the defendants in an equity cause were committed for contempt for the violation of a preliminary injunction restraining them from committing the acts to enjoin which the suit was brought, and upon an application to the supreme court for a writ of error the writ was denied upon the ground that the order of committal was not a final judgment or decree. That was a case in which the propriety of the order could have been reconsidered by the court which made it at final decree, and, being an interlocutory order in the progress of the cause, could only be reviewed by the supreme court upon an appeal from the final decree. The case is quite different, however, when a person not a party to the cause is imprisoned or fined for contempt. The order proceeds upon a matter distinct from the general subject of the litigation. The aggrieved party has no opportunity to be heard when the cause is before the court at final hearing, and as to him the proceeding is finally determined when the order is made. Not being a party to the cause, he could not be heard on an appeal from a final decree; and, unless he can be heard by a writ of error, he has no review, but must submit to the determination of the court below, if the court has jurisdiction, however unwarranted it might be by the facts or the law of the case. It would be a reproach to the administration of justice if the statutes of the

United States conferring appellate jurisdiction upon this court to review all final decisions of the circuit court failed to provide any means of review to the citizen who has been deprived of his liberty or required to pay a fine without just cause. We think the power conferred extends to a case like the present.

Whenever, in a cause, there is a determination of some question of right, a decision is final, in the sense in which an appeal from it is permitted, if it decides and disposes of the whole merits of the cause as between the parties to the appeal, reserving no further questions or directions for the further judgment of the court, so that to bring the cause again before the court for decision will not be necessary. Mackeye v. Mallory (decided by this court Feb. 23, 1897) 24 C. C. A. 420, 79 Fed. 1; Rouse v. Hornsby, 14 C. C. A. 377, 67 Fed. 219; Gumbel v. Pitkin, 113 U. S. 545, 5 Sup. Ct. 616; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736.

Upon its merits, the appeal presents the question whether an attorney who has prepared a codicil to a will alleged to have been executed and published by the testator, his client, and fraudulently destroyed by one of the executors named in a subsequent codicil, can be required to disclose its contents, and whether it was signed by the testator in the presence of attesting witnesses, in form and manner to constitute a valid publication; the attorney being present at the time of the alleged publication, but not being an attesting witness. Irrespective of the effect of the statute of this state, the question would be free from doubt. The rule of evidence which forbids an attorney, without the consent of his client, to disclose communications made to him professionally by the client, applies generally to the contents of documents intrusted to him, unless he is a subscribing witness, whether the documents are evidence of title, formal instruments, or merely letters or memoranda. 2 Tayl. Ev. §§ 911–936. If he has attested an instrument for his client, the professional relation is thereby abandoned pro hac vice; and he may be compelled, not only to prove its execution, but all that passed at the time. An exception to the general rule exists in the case of testamentary dispositions (1 Whart. Ev. 591), upon the principle that the disclosure can affect no right or interest of the client. In Blackburn v. Crawfords, 3 Wall. 175, it was held that an attorney who drew a will could testify as to statements made by the testator about the legitimacy of his children and his relations to their mother, made in interviews between him and the attorney preceding and connected with the preparation of the will. In Glover v. Patten, 165 U. S. 394, 17 Sup. Ct. 411, it was held, in a suit between devisees under a will, that statements made by the testator to counsel respecting the execution of the will or of similar documents were not privileged.

By section 858 of the Revised Statutes of the United States, the laws of the state in which the court is held are the rules of decision for the courts of the United States as to the competency of witnesses in equity causes as well as in trials at common law; and, as construed by the supreme court in its latest utterances upon the subject, this provision supplies the criterion of the competency of evidence as well as the competency of witnesses. Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250–255, 5 Sup. Ct. 119; Insurance Co. v. Robison,

19 U. S. App. 266, 7 C. C. A. 444, and 58 Fed. 723. In this state the common-law rules of evidence in respect to privileged communications have been materially changed by Code Civ. Proc. §§ 835, 836. Whether these changes were inconsiderate, and due to hasty and superficial legislation, or whether they were made with a deliberate purpose to seal the lips of witnesses in cases where the courts had refused to do so, it is unnecessary to inquire. The statute must be given the effect which its language requires. Originally the Code merely provided that an attorney or counselor at law should not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment, unless that provision should be "expressly waived" by the client. The statute came before the court of appeals of New York for construction in two cases decided in 1888. In re Coleman's Will, 111 N. Y. 220, 19 N. E. 71, and Loder v. Whelpley, 111 N. Y. 239, 18 N. E. 874. In both of these cases it was held that the prohibition of the Code precluded the disclosure of instructions given by a testator to an attorney employed to draw his will; but in Coleman's Case it was held that, where the attorney became the attesting witness to the will at the request of the testator, the prohibition was "expressly waived," within the meaning of the Code, and the attorney was competent to testify as to all the circumstances attending the execution of the instrument. Thereafter the Code was amended so that the prohibition should apply, unless "expressly waived upon the trial" by the client, but should not disqualify an attorney "in the probate of a will" from becoming a witness "as to its preparation and execution," if one of the subscribing witnesses thereto. As the statute now reads, no act of the client, except a waiver upon the trial, can be treated as a waiver of the prohibition of disclosure; and, except he is an attesting witness to a will, in no case is an attorney permitted to make disclosure in respect to the contents of any documents or other information communicated to him in the course of his professional employment by the client. It follows that the plaintiff in error properly declined to disclose the contents of the codicil, or testify to the declarations of the testator attending its execution.

The circumstance that other witnesses were present at the time when the codicil is alleged to have been executed and published, even though they heard all that took place, and were aware of the contents of the instrument, is wholly immaterial. Under such circumstances the other witnesses are permitted to testify to the communications which pass between client and attorney. Jackson v. French, 3 Wend. 337; Hoy v. Morris, 13 Gray, 519; People v. Buchanan, 145 N. Y. 1, 39 N. E. 846. Nor does the circumstance that the complainants may be able to prove that the codicil was fraudulently destroyed by one of the persons who was appointed an executor of the will by a subsequent codicil deflect the operation of the rule against disclosure by the attorney. Probably the statute is not to be construed as intended to apply to cases of fraud contrived by the client and solicitor in concert, or to communications between them made in the course of a criminal scheme. Before the statute the privilege did not apply to all communications between client and attorney, but only to such as passed between them in professional confidence; and the courts generally repudi-

ated the proposition that the contriving of a fraud or the conniving in a crime could form part of the professional occupation of an attorney or counsel. There is no pretense in this case that the codicil, or anything which took place at the time of its alleged publication, was of a fraudulent or criminal nature.

We conclude that the order of the court below was an erroneous exercise of power, and it is therefore reversed.