SULLIVAN v. ASSOCIATED BILLPOSTERS AND DISTRIBUTORS OF THE UNITED STATES AND CANADA et al.

(Circuit Court of Appeals, Second Circuit. March 2, 1925.)

No. 106.

**1. Appeal and error ⬅78(1)—Order denying right to revive against executors of deceased defendant is a "final decision," and reviewable.**

An order denying the right to revive an action against the executors of a deceased defendant is a "final decision," and reviewable by the Circuit Court of Appeals, under Judicial Code, § 128 (Comp. St. § 1120).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decision.]

**2. Abatement and revival ⬅48—Common law ⬅7—Whether cause of action survives in the federal courts is determined by the common law.**

In the absence of any federal statute on the subject, the question whether a cause of action survives the death of plaintiff or defendant in a suit in a federal court is to be determined according to the principles of the common law, which, however, includes the Statute of 4 Edward III.

**3. Abatement and revival ⬅52—Common-law rule as to actions in tort.**

By the common law a right of action for a tort survives, and the action may be revived against the personal representative of a deceased defendant, where by his wrongful act he acquired specific property belonging to another, which, or the proceeds of which, were added to his estate; otherwise, the action abates by his death.

**4. Penalties ⬅31—Penal action does not survive.**

A right of action to recover a penalty does not survive.

**5. Action ⊙⟹19—Provision for recovery of enhanced damages is remedial, and not penal.**

A statute may be penal in one part and remedial in another, and if it gives a remedy for an injury to the person injured to that extent it is remedial, irrespective of whether it limits recovery to the actual damages sustained, or permits recovery of enhanced damages.

**6. Abatement and revival ⊙⟹52—Causes of action under remedial statutes to recover for torts do not survive, unless expressly so provided.**

Causes of action under remedial statutes to recover for torts abate according to the established rules of the common law, the same as ordinary common-law actions, unless saved by a statutory provision.

**7. Property ⊙⟹1 — "Business," in statutory sense, is not "property."**

There is a clear distinction between "business" and "property," as the words are generally used in taxing and other statutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business; Property.]·

**8. Statutes ⊙⟹206—Effect is to be given, if possible, to every word.**

In the construction of statutes, one of the cardinal rules is that effect is to be given, if possible, to every word.

**9. Abatement and revival ⊙⟹55(1)—Right of action for damages under Anti-Trust Act survives.**

Under Sherman Anti-Trust Act, § 7 (Comp. St. § 8829), giving a right of action for damages to one injured in his "business" by acts done in violation of the statute, that cause of action survives though the acts complained of do not directly diminish plaintiff's "property" already acquired, but relate to loss of trade and future profits, and such action may be revived against the executors of a deceased defendant.

**10. Damages ⊙⟹93—Measure of damages recoverable against executor may not be the same as against decedent, general rule being that exemplary not recoverable against executor.**

The measure of damages recoverable against the personal representative of a deceased tortfeasor is not always the same as the amount which might have been recovered against the decedent; the general rule being that exemplary damages are not recoverable against an executor for acts of his testator.

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Hannah Sullivan, as assignee for the benefit of creditors of the C. J. Sullivan Advertising Company, against the Associated Billposters and Distributors of the United States and Canada and others. From an order denying a motion to revive the action against the Executors of Samuel Pratt, deceased defendant, plaintiff brings error. Reversed and remanded, with directions.

See, also, 272 F. 323.

The C. J. Sullivan Advertising Company, at the time this suit was instituted, was a corporation organized under the laws of the state of New York, and was so organized in the year 1908. It was engaged from March, 1908, to October 29, 1913, which are the times mentioned in the complaint, in the billposting and advertising business, displaying such advertising on its billposting plants and marketing said advertising business so secured to the billposters throughout the United States who were engaged in interstate commerce. It is claimed that prior to 1913, and prior to the acts complained of herein, it had developed a large and profitable business, and but for the facts alleged it would have continued to enjoy a lucrative business. The defendant corporation is also organized under the laws of New York. The other defendants are the officers and members of the defendant corporation and the administrators or executors of deceased members.

The complaint charges a combination and conspiracy on the part of the defendants to have been in existence since 1891, the purpose and object of which were to monopolize the billposting business in the cities and towns wherein the conspirators were located, and thus to dominate and control the billposting business throughout the United States and Canada, and to prevent and restrain all interstate trade and commerce between the different states and territories of the United States and between the United States and the Dominion of Canada in posters, except such trade and commerce as should relate to and result in the placing of posters on the boards of the conspirators.

The complaint sets forth in considerable detail the various acts and measures done in furtherance of the conspiracy, which need not be included in this preliminary statement. It then sets forth the results of the conspiracy, and that the interstate trade and commerce of the United States has been thereby unreasonably and unduly restrained, and it made impossible for any advertiser to have national work done, except by members of the defendant association and upon the terms and for the price arbitrarily fixed by the association. It is also set forth that as a further result of the conspiracy interstate trade and commerce in stock posters is restrained and prevented to such an extent that advertisers desiring to purchase stock

posters are not permitted to do so, except in those instances in which such advertisers desire to have the name placed upon the boards of members of a defendant association, and to the further extent that independent billposters, not members of the association, are prevented and restrained from purchasing stock posters at all in interstate commerce.

It is also alleged that, as a result of the conspiracy and in furtherance thereof, billboards owned and operated by the plaintiff were torn down or caused to be torn down and destroyed by the defendants, and that its customers were coerced by defendants and prevented from entering into contracts with it, and from carrying out contracts which they had made with it for advertising, with the result that the business of the plaintiff was destroyed, and it was compelled to make an assignment for the benefit of creditors; that its business was rendered unprofitable, its property lost, and the profits of its trade diminished; and that it lost from April 1, 1908, down to and including March 15, 1919, $400,000. It demanded judgment against the defendants for the sum of $400,000, and treble damages, together with reasonable counsel fees, besides the costs and disbursements of the action.

Among the individual defendants in the action was one Samuel Pratt. And on March 22, 1924, the plaintiff gave notice that on March 25th the plaintiff would move for an order reviving the action against the executors of Samuel Pratt, who had died on February 22, 1922, and substituting them as defendants in the place and stead of the said Pratt without prejudice to the proceedings already had. The above action had been commenced in May, 1920. When the motion to revive and continue the action against the executors of Pratt and to substitute them in the place and stead of Pratt was heard in the District Court, it was in all respects denied.

From the order denying the motion, entered on April 16, 1924, the plaintiff has brought the case into this court by writ of error.

Abraham Benedict and Gustavus A. Rogers, both of New York City, for plaintiff in error.

Geller, Rolston & Blanc, of New York City (George S. Mittendorf and Clinton C. Swan, both of New York City, of counsel), for defendants in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question which is now presented to this court is simply whether it was error for the court below to deny the plaintiff's motion to continue the action against the executors of Samuel Pratt, deceased, and to substitute them as defendants in his place and stead. As the answer to that question depends upon the character of the action in which substitution of the executors is sought, the nature of the action which it is sought to continue, and in which this substitution of parties is sought, is important, and so has been set forth in considerable fullness in the statement preliminary to this opinion.

[1] But, before proceeding to the consideration of the real question presented, it is necessary to dispose of a preliminary question. Unless the order made in the court below and brought here by writ of error is a "final" order, we have no authority at this time to determine the question of its validity. But we have no doubt that the order which denied the right to revive the action against the executors of a deceased defendant is a "final" decision and therefore reviewable by this court. A decision is "final," in the sense in which an appeal from it is permitted, when it decides the whole merits of the cause as between the parties to the appeal, making it unnecessary as between them to bring the case a second time before the court for its decision. Mackaye v. Mallory, 79 F. 1, 24 C. C. A. 420; Butler v. Fayerweather, 91 F. 458, 33 C. C. A. 625; Odell v. H. Batterman Co., 223 F. 292, 295, 138 C. C. A. 534; Empire Trust Co. v. Brooks, 232 F. 641, 146 C. C. A. 567; Great Lakes Towing Co. v. St. Joseph Chicago S. S. Co., 253 F. 635, 165 C. C. A. 261; Gas & Electric Securities Co. v. Manhattan & Queens Traction Corporation (C. C. A.) 266 F. 625, 630; Adler v. Seaman (C. C. A.) 266 F. 828, 839.

It appears that among the defendants in the pending action are Kirwin H. Fulton, Annie Link, and the Kings County Trust Company as the executors of the estate of Barney Link, and Edwilda M. O'Melia and Harry F. O'Melia, administrators of the estate of James F. O'Melia. Barney Link, according to the allegations of the bill of complaint, was a member of the board of directors during the time involved in the suit, as was also James F. O'Melia. Link died on March 2, 1917. It is alleged that the acts complained of relate to acts performed by Link in his lifetime prior to the date of his death in conjunction with the other defendants. It is not alleged when O'Melia died.

But no question seems to have been raised as to the right to join the executors and administrators of Link and O'Melia as defendants in the original bill. The question now presented comes here because of the death of the defendant Pratt, who died on February 22, 1922, nearly two years after the institution of the suit. The plaintiff moved for an order reviving and continuing the action against the executors of Pratt. It was this motion which the court below denied; and it is that order which was brought into this court, by the writ of error.

The principles of natural justice would seem to require that executors and administrators of a deceased person should have the same right as their decedent himself had to maintain a suit for the recovery of damages which their decedent's estate has suffered by reason of the tortious acts of any person. To hold otherwise is to prejudice the rights of heirs and creditors, and to allow the wrongdoer to escape the consequences of his wrongful act. See Hooper v. Gorham, 45 Me. 209, 213. And for like reasons it would seem that the representatives of a deceased person should be liable to answer out of their decedent's estate for the wrongful acts committed by him in his lifetime, whereby another had suffered in his estate, and by which the estate of the wrongdoer had increased the amount of his own estate. Whether or not existing law permits this, and whether upon the facts alleged it appears that the plaintiff's estate was diminished or the defendant's estate increased by his wrongful acts, must now be considered.

The courts of equity recognized the injustice of the abatement of a suit by the death of a party. In Clarke v. Mathewson, 12 Pet. 164, 171, 9 L. Ed. 1041, Judge Story called attention to the difference between a suit in equity and an action at law because of the death of a party; and as a general rule the maxim "actio personalis moritur cum persona" has not applied to cases falling within the jurisdiction of equity, and equitable remedies exist to the same extent against executors and administrators as they did against the decedent. Reed v. Copeland, 50 Conn. 472, 47 Am. Rep. 663; Wynn v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228; Harrigan v. Gilchrist, 121 Wis. 127, 99 N. W. 909. This explains why it is that in suits for infringement of patents, trademarks and copyrights, where injunctions are sought and claims are made, the suits survive in favor of and against personal representatives. Illinois Central R. Co. v. Turrill,

110 U. S. 301, 4 S. Ct. 5, 28 L. Ed. 154; Griswold v. Hilton (C. C.) 87 F. 256; Oakley v. Dalton, 35 Ch. D. 700. These suits are brought in equity courts, and are governed by principles not applicable to actions at law.

Sir Frederick Pollock, in his Work on Torts (11th Ed., p. 61), discussing the effect produced on liability for a death of either the person wronged or the wrongdoer, declares it to be one of "the least rational parts" of the law; and he also declares that "when once the notion of vengeance has been put aside, and that of compensation substituted, the rule 'actio personalis moritur cum persona, seems to be without plausible ground. First, as to the liability, it is impossible to see why a wrongdoer's estate should ever be exempted from making satisfaction for his wrongs. It is better that the residuary legatee should be to some extent cut short than that the person wronged should be deprived of redress." The same writer, on page 71, after stating the rule that the right of action survives against the executor in cases where the decedent has added to his own estate property or the value or proceeds of property belonging to another, states that the rule is "limited to specific acquisitions or their value. It does not include the recovery of damages, as such, for a wrong, though the wrong may have increased the wrongdoer's estate in the sense of being useful to him or saving him expense."

In Schreiber v. Sharpless, 110 U. S. 76, 3 S. Ct. 423, 28 L. Ed. 65, a suit was brought not in equity to obtain an injunction and damages because of an infringement of a copyright, but to recover penalties and forfeitures under the Copyright Act (section 4965, Rev. St.), and it was held that the suit abated by the death of the defendant and the cause of action did not survive—that at common law qui tam actions on penal statutes of the United States do not survive. The court said: "At common law actions on penal statutes do not survive, * * * and there is no act of Congress which establishes any other rule in respect to actions on the penal statutes of the United States. * * * As the nature of penalties and forfeitures imposed by acts of Congress cannot be changed by state laws, it follows that the state statutes allowing suits on state penal statutes to be prosecuted after the death of the offender can have no effect on suits in the courts of the United States for the recovery of penalties imposed by an act of Congress."

That this decision is inapplicable to the

case now before the court will appear as we proceed. This brings us to consider the rule at common law. It is undoubted that the death of a person in whose favor or against whom a cause of action has accrued may operate to abate the right of action itself, so that no action can be afterward commenced by or against his personal representative, nor an action brought by or against him be-fore his death revived and continued by or against his personal representative. The question now before us is whether, under the circumstances of this case, the cause of action survived.

But it is to be understood that the question to be considered is restricted to the survivability of the action simply as respects the personal representatives of Samuel Pratt, who died after the action was commenced. The order brought here by writ of error applied simply to those representatives, and could apply only as to them, inasmuch as section 956 of the Revised Statutes (Comp. St. § 1593) provides as follows: "If there are two or more plaintiffs or defendants, in a suit where the cause of action survives to the surviving plaintiff or against the surviving defendant, and one or more of them dies, the writ or action shall not be thereby abated; but, such death being suggested upon the record, the action shall proceed at the suit of the surviving plaintiff against the surviving defendant." And see Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713; In re Connaway, 178 U. S. 435, 20 S. Ct. 951, 44 L. Ed. 1134; Estes v. Worthington (C. C.) 30 F. 465.

The ancient maxim of the common law was "actio personalis moritur cum persona." The harshness of the rule that personal actions ex delicto died with the person was early seen, and it was modified to some extent by the Statute of 4 Edward III, called the "Statute de Bonis Asportatis in Vita Testatoris," so as to allow executors to maintain actions of trespass for chattels taken and carried away in the lifetime of their testator. But that statute did not apply to real estate and the Statute 3 and 4 Wm. IV gave to executors and administrators rights of action for torts to real as well as personal estate.

The harshness of the rule that personal actions die with the person has led to its modification in a greater or less degree by statute in most of the states. The statutes of the United States contain the following provision: "When either of the parties, whether plaintiff, or petitioner, or defendant, in

any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment. The defendant shall answer accordingly; and the court shall hear and determine the cause and render judgment for or against the executor or administrator, as the case may require." Rev. St. U. S. § 955 (Comp. St. § 1592).

[2] This has been the law of the United States since its adoption by the First Congress. See Judiciary Act 1789, 1 Stat. c. 20, § 31, p. 90. While the statutes of the United States prescribe the methods for reviving actions which survive, they do not prescribe what causes of action shall survive. The language of the statute above set forth is, "in case the cause of action survives by law," the executor or administrator may prosecute or defend, etc.; and as there is no other federal statute on the subject the question naturally arises what is meant by the phrase "by law" in the connection in which it is used. It does not refer to state law; for the statutes of a state are plainly without application to cases which originate under an act of Congress. A cause of action which is given by a federal statute, if no specific provision is made by act of Congress for its survival, survives or not according to the principles of the common law. But in considering whether such an action survives at "common law" it must be kept in mind that the courts regard the Statute of Edward III, heretofore referred to, as a part of our common law. Hegerich v. Keddie, 99 N. Y. 258, 1 N. E. 787, 52 Am. Rep. 25; Wynn v. Tallapoosa Bank, 168 Ala. 469, 53 So. 228; Ahern v. McGlinchy, 112 Me. 58, 90 A. 709, 52 L. R. A. (N. S.) 885; Baker v. Crandall, 78 Mo. 584, 47 Am. Rep. 126; Russell v. Sunbury, 37 Ohio St. 372, 41 Am. Rep. 523; Clarke v. McClelland, 9 Pa. 128.

[3] It was a rule of the common law that most causes of action based on contract survived, while most of those founded on tort abated. But the rule was subject to various exceptions. The real test, so far as tort actions were concerned, seems to have been whether the injury on which the cause of action was based affected property rights, or affected the person alone. In the former case the cause of action survived, while in the latter it abated. See 21 Encyc. of Pl. & Pr. 31. The common-law rule, as laid down in 3 Blackstone's Comm. 302, is as follows: " * * * The death of either party is at

once an abatement of the suit. And in actions merely personal, arising ex delicto (from wrong done), for wrongs actually done or committed by the defendant, as trespass, battery, and slander, the rule is that actio personalis moritur cum persona (a personal action dies with the person); and it shall never be revived either by or against the executors or other representatives. For neither the executors of the plaintiff have received, nor those of the defendant have committed, in their own personal capacity, any manner of wrong or injury."

In Hambly v. Trott, Cowp. 371, 376, which was decided in 1776, Lord Mansfield, discussing the maxim above quoted, declared that it was not generally true and much less universally so. The question in that case was whether an action of trover could be maintained against an executor for a conversion by his testator. The case was twice argued before the court, and at its conclusion it was said: "Cur. advisare vult." On a subsequent day Lord Mansfield delivered the unanimous opinion of the court, in which he said:

"Here therefore is a fundamental distinction. If it is a sort of injury by which the offender acquires no gain to himself at the expense of the sufferer as beating or imprisoning a man, etc., there the person injured has only a reparation for the delictum in damages to be assessed by a jury. But where, besides the crime, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor. As, for instance, the executor shall not be chargeable for the injury done by his testator in cutting down another man's trees, but for the benefit arising to his testator for the value or sale of the trees he shall. So far as the tort itself goes, an executor shall not be liable; and therefore it is that all public and all private crimes die with the offender, and the executor is not chargeable; but, so far as the act of the offender is beneficial, his assets ought to be answerable, and his executor therefore shall be charged."

In Phillips v. Homfray (1883) 24 L. R. Ch. Div. 439, the matter was considered in the Court of Appeal, and Hambly v. Trott was commented on at length. It was held by Cotton and Bowen, L. JJ. (dissentient, Baggallay, L. J.), that apart from cases of breach of contract a remedy for a wrongful act done by a deceased person cannot be pursued against his estate, unless property or the proceeds or value of property belonging to another person have been appropriated by the deceased person and added to his estate. Baggallay, L. J., in dissenting stated his views at considerable length and in the course of his opinion said:

"Speaking with much diffidence, as my views in this respect differ from those of my colleagues, I feel bound to say that I cannot appreciate the reasons upon which it is insisted that, although executors are bound to account for any accretions to the property of their testator derived directly from his wrongful act, they are not liable for the amount or value of any other benefit which may be derived by his estate from or by reason of such wrongful act. I can find nothing in the language used by Lord Mansfield that can support this view."

In Finlay v. Chirney (1888) L. R. 20 Q. B. 494, the Court of Appeal had before it the question whether an action for breach of promise of marriage survived against the personal representatives of the promisor. Judgment was entered for the defendants. Bowen, L. J., in his opinion, commented at some length on the maxim that personal actions die with the person. After stating that modern jurisprudence, since the reign of Queen Elizabeth, had adopted a rough, but convenient, interpretation of the maxim, he said:

"On the one side of the line of demarcation lie actions of tort. Remedies for wrongful acts, according to the present law, can only be pursued against the estate of a deceased person when property or the proceeds or value of property belonging to another have been appropriated by the deceased person and added to his own estate or moneys. On the other side of the line lie actions founded on any contract, express or implied, 'or any other duty to be performed.' Early in the reign of James an action was allowed against executors for payment of a debt, if clothed in the form of an action on the case in assumpsit (Pinchon's Case, 9 Rep. 89b); and this remedial view of the law has been adopted and followed ever since. The question we have to decide to-day relates to a class of actions which, though in its form and substance contractual, differs from other forms of actions ex contractu in permitting damages to be given as for a wrong. This double aspect of an action for breach of promise creates the perplexity in the present instance. On which side of the line is to fall an action which is based on the hypothesis of a broken contract yet is attended with some of the special consequences of a personal wrong. * * * "

He continued:

"There may, of course, be an actual loss to the temporal estate of the promisee, arising out of the breach of contract. If such loss is to be relied on as independent and special damage in an action against executors, it ought to be specially pleaded, and in order to see if such damage is in fact recoverable the ordinary line as to remoteness of damages will have to be drawn according to the well-known doctrine of Hadley v. Baxendale, 9 Ex. 341."

He added:

"With respect to the claim for underclothing, etc., it is sufficient to say that the materials furnished by the plaintiff's affidavit do not show that such purchase was made under circumstances which would bring the expenditure within the head of damages flowing directly from the alleged breach of contract or within the contemplation of the parties at the time. We do not desire to intimate any opinion that expenditure in respect of a marriage trousseau or other marriage preparation must necessarily be too remote to be recovered against executors in an action for breach of promise of marriage—the matter must in each case depend upon the circumstances of the case. * * *"

In United States v. Daniel, 6 How. 11, 12 L. Ed. 323, an action was brought by the United States against the executors of a United States marshal, on the ground that during his lifetime one of his deputies had made false returns on certain executions, by which the plaintiff had been damaged. The court, holding that the action could not be maintained, said:

"If the person charged has secured no benefit to himself at the expense of the sufferer, the cause of action is said not to survive; but where, by means of the offense, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor. And it is laid down in Cowper, 376, with respect to the form, that no action survives where the plea of the defendant must be 'not guilty,' but where the case survives, some other form must be pursued. If the deputy marshal, in the misfeasance complained of, received money or property, the marshal being responsible for such acts, the cause of action survived against his executors. But this is not the case made in the present action. It is an action on the case, requiring the general issue of 'not guilty.' If a liability were shown against the deceased marshal, it could not be enforced against his execu-

tors in this form. No action, where the plea must be that the testator was not guilty, can lie at common law, against the executor. Upon the face of the record, the action arises ex delicto; and all private criminal injuries or wrongs as well as all public crimes, are buried with the offender. 3 Bac. Abr. 539."

In Patton v. Brady, 184 U. S. 608, 614, 22 S. Ct. 493, 495 (46 L. Ed. 713) the court declared: "If we turn to the common law, there the rule was that if a party increased his own estate by wrongfully taking another's property an action against him would survive his death, and might be revived against his personal representative." And in Iron Gate Bank v. Brady, 184 U. S. 665, 22 S. Ct. 529, 46 L. Ed. 739, the suit was brought against a collector of internal revenue, who had seized certain personal property of the plaintiff's by virtue of a distress warrant, with intent to sell it in payment of a tax assessed against the plaintiff, and which it had refused to pay on the ground of its illegality. The plaintiff, in order to prevent the removal and sale, paid, under protest, the collector the amount of the tax, and then sued him to recover it back. The case was carried to the Supreme Court. The collector died, and an application was made to revive in the name of the personal representative. Judgment was entered remanding the case, with instructions that the court below should set aside its judgment and enter one abating the action by reason of the death of the defendant. The court said:

"So far as a recovery of the tax charged to have been illegally levied and collected is sought, it is practically an action in assumpsit for money had and received. Beyond that nothing is suggested but a tort, and a tort by which the estate of the defendant was not increased and the estate of the plaintiff damaged only as an indirect consequence of the alleged wrongful act of the defendant. Such a tort does not, either at common law or by the statutes of Virginia, survive the death of the wrongdoer."

In Hegerich v. Keddie, 99 N. Y. 258, 260, 1 N. E. 787, 788 (52 Am. Rep. 25) Chief Justice Ruger, writing for the court and commenting upon the Statute of Edward III, stated that actions "were given to the executors of a deceased person for personal property taken from their testator and carried away, but for all other causes of action arising out of wrongs done either to the person or property the rule of 'actio personalis moritur cum persona,' applied."

In Mumpower v. City of Bristol, 94 Va. 737, 27 S. E. 581, the Supreme Court of Ap-

peals of Virginia in 1897 had before it the question whether an action survived which was brought to recover damages which the plaintiff had suffered in his business because the defendant had sued out maliciously an injunction whereby the operation of his mill was suspended. The defendant had obtained an injunction in October, 1891, and it remained operative until July, 1893. The plaintiff averred that by reason of the injunction he had been greatly injured "in his business and employment running and operating his mill and was deprived of great profits and gains." It was held that the action did not survive under a provision of the Virginia Code which allowed an action to be maintained against the personal representative within a specified time for damage to "any estate of or by his decedent." The court said:

"It is quite obvious that this injunction did not operate to take or carry away the goods of the plaintiff, nor cause the waste or destruction of, or inflict any damage upon, the estate of the plaintiff. It is true that the language of the statute is comprehensive and embraces damage of any kind or decree to the estate, real or personal, of the person aggrieved; but the damage must be direct, and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person only. No part of the defendant's property was taken or carried away; no part of it was wasted or destroyed; the plaintiff's use of his property, and not the property itself, was affected by the act of which he complains."

In Jones v. Barmm, 217 Ill. 381, 75 N. E. 505, in 1905, an action was brought to recover damages which the plaintiff had suffered in his business by the conduct of the defendant. The question was whether the action survived either at common law or under the state statute, which provided for the survival of actions to recover damages "for an injury to real or personal property." The court held that the action did not survive and that the statute did not apply to "actions for damages to one's business."

In Payne's Appeal, 65 Conn. 397, 407, 408, 32 A. 948, 952, 33 L. R. A. 418, 48 Am. St. Rep. 215, after stating that the test of the survivability of an action is to be found, not in the artificial form of the action, but in the substance of the action, the court said: "A safe test, therefore, for determining the survival of an action on the ground of the substantial cause of action being such quasi contract: Did the wrongdoer acquire specific property by which, or by the proceeds of which, the assets in the hands of his executor have been increased?" If "specific property" is acquired, the court held the cause of action survives; if otherwise, it does not.

In 1 C. J. 185, it is said: "In order that a right of action arising out of a tort should survive against the executor or administrator of the tort-feasor, it was generally held essential that the latter should, by the wrongful act, have acquired specific property by which, or by the proceeds of which, the assets in the hands of his personal representatives were increased. It was not enough that the benefit resulted or that expense was saved to the tort-feasor by which his estate was larger than it otherwise would have been."

In the case now before the court it does not appear that the deceased defendant has in his estate any of the plaintiff's property. Assuming as we must the allegations of the complaint to be true, they amount to a claim that the estate of the decedent has been increased by profits made by the defendants wrongfully diverted from the plaintiff. So far as the injury done to property is concerned, it is indirect and consequential, and, the action being ex delicto, under the foregoing authorities it would not survive against the personal representatives. And even if it were shown that one's property was actually diminished, and not merely that he was prevented from increasing it by gains he otherwise would have made, the action would not survive. For the test of survivability does not turn on the fact that one's estate has been diminished. Thus in Henshaw v. Miller, 58 U. S. 211, 15 L. Ed. 222, it was held an action brought to recover damages for fraudulently recommending a third party as worthy of credit whereby financial loss resulted and one's estate was diminished did not survive, either at common law or under the statute of Virginia.

In Read v. Hatch, 19 Pick. (Mass.) 47, an action was brought for fraudulently recommending a trader as in good credit, by means whereof the plaintiff was induced to sell him goods on credit, and thereby sustained damage. The action was brought on a statute of Massachusetts which provided that actions of trespass and trespass on the case for damage done to real or personal estate should survive. The defendant died pending the suit, and the question was whether it survived. In the course of his opinion Chief Justice Shaw, writing for the court and referring to the statute, said:

"It is contended that a false representation, by which one is induced to part with his property, by a sale on credit to an insolvent

person, by means of which he is in danger of losing it, is a damage done to him in respect to his personal property. But we are of opinion that this would be a forced construction. * * * If this were the true construction, then every injury by which one should be * * * subjected to pecuniary loss would, directly or indirectly, be a damage to his personal property. But we are of opinion that it must have a more limited construction, and be confined to damage done to some specific personal estate of which one may be the owner. A mere fraud or cheat, by which one sustains a pecuniary loss, cannot be regarded as a damage to personal estate. The action is abated at common law, * * * and, not surviving by force of the statute, must be deemed to stand abated."

This court, in United Copper Securities Company v. Amalgamated Copper Co., 232 F. 574, 576, 146 C. C. A. 532, 536, had before it a complaint which charged a conspiracy entered into by certain decedents in their lifetime and by their executors after their death to monopolize and restrain interstate commerce and trade, whereby the plaintiff's assignors had been damaged in their business and property in excess of $5,000,-000. The plaintiff demanded judgment in the sum of threefold damages under section 7, of the Sherman Act (Comp. St. § 8829). The court below ordered the words charging the executors to be stricken out of the complaint wherever they occurred. The case was brought into this court on writ of error to review that order, and it was held that the order "was right, so far as the charge against them was for their own acts, but not so far as it was attempted to hold the estate of their testators liable. The pleader should have charged the executors officially for the acts of their testators and individually for their own acts." In the course of its opinion the court came to the conclusion that the injury complained of was an injury to the estate of the plaintiff's assignors, and not to them personally, and that on that account it might be assigned, and as to that the court said: "We come to this conclusion willingly, because it would seem to be most inequitable that the representatives of an individual or of a corporation whose business has been wrongfully destroyed shall be denied all remedy because of the death or corporate dissolution of the party they represent."

The question whether the cause of action survived as against the estates of deceased persons, which was the second question involved, was not fully considered. It was disposed of simply as follows: "The second question is more doubtful, but it was held in U. S. v. Daniel, 6 How. 11, 12 L. Ed. 323, an action against the executors of a sheriff for a false return, that such a cause of action, being ex delicto, would not survive against executors, unless the decedent secured some benefit at the expense of the sufferer. This exception will be a matter of proof, and is not a reason for striking the executors out as parties."

The evident intention of the court was to leave that question open, to be determined upon the evidence adduced at the trial showing that the decedent secured some benefit at the expense of the sufferer. The court plainly did not determine what "benefit at the expense of the sufferer" would have to be shown to enable the plaintiff to recover. We therefore do not consider that case as binding upon us at this time in respect of the question which is now presented. Moreover the District Judge, who made the order below in the instant case, holding that the right of action did not survive as against the executors of Pratt, evidently did not consider himself concluded by the decision of this court in the United Copper Securities Company Case, for in his opinion he made no allusion to it, although he was one of the judges who sat in the case in this court and concurred therein, writing a separate opinion.

[4] We have referred to Schreiber v. Sharpless, supra, in which the Supreme Court held that an action under section 4965, Rev. Stat., to recover penalties for infringing a copyright, did not survive as the action was a penal one. It is to be observed that that was not an action to recover damages under the Copyright Act, but one for penalties and forfeitures (Rev. Stat. § 4967). In the opinion in that case the Chief Justice specifically stated that "the suit was not for the damages the plaintiffs had sustained by the infringement, but for penalties and forfeitures recoverable" under the act. We think the distinction was material, inasmuch as whether a cause of action survives depends upon its substance, not its form. The substance in that case was "penalties," and in this case the substance is not penalties, but "damages."

Moreover, it is to be borne in mind that under section 7 of the Sherman Anti-Trust Act the damages to be recovered are threefold the actual damages which the "person" has sustained in his business or property, and that this does not prevent the section

from being remedial. That is made clear in the case now to be considered.

[5] The word "penal" is elastic in its meaning, as pointed out in Huntington v. Attrill, 146 U. S. 657, 667, 668, 13 S. Ct. 224, 227, 36 L. Ed. 1123. In that case Mr. Justice Gray, writing for the court, said: "Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American Constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."

He continued: "As said by Mr. Justice Ashhurst in the King's Bench, and repeated by Mr. Justice Wilde in the Supreme Judicial Court of Massachusetts, 'it has been held, in many instances, that where a statute gives accumulative damages to the party grieved, it is not a penal action.' Woodgate v. Knatchbull, 2 T. R. 148, 154; Read v. Chelmsford, 16 Pick. 128, 132. Thus a statute giving to a tenant, ousted without notice, double the yearly value of the premises against the landlord, has been held to be 'not like a penal law, where a punishment is imposed for a crime,' but 'rather as a remedial than a penal law,' because 'the act indeed does give a penalty, but it is to the party grieved.' Lake v. Smith, 1 Bos. & Pul. (N. R.) 174, 179, 180, 181; Wilkinson v. Colley, 5 Burrow, 2694, 2698."

The Act of July 2, 1890, known as the Sherman Anti-Trust Law, and which is the act herein involved, was enacted to protect trade and commerce against unlawful restraints and monopolies. It makes illegal certain contracts and combinations in restraint of trade or commerce. It declares that every person who shall make any such contract or enter into any such combination or conspiracy as the statute forbids shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by fine not exceeding $5,000 or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court. The portions of the act containing the provisions above referred to are clearly "penal." Then the act contains the following:

"Sec. 7 Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of

6 F.(2d)—64

the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee.

"Sec. 8. That the word 'person,' or 'persons,' wherever used in this act shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the territories, the laws of any state, or the laws of any foreign country."

26 Stat. c. 647, p. 209 (Comp. St. §§ 8829, 8830).

The provisions above quoted are clearly remedial. They give a cause of action to any "person" "injured in his business or property" by reason of anything forbidden or declared to be unlawful by the act, and they declare that "a person" "so injured shall recover threefold" "the damages by him sustained." A statute may be penal in one part and remedial in another. If a statute which is penal in part gives a remedy for an injury to the person injured to the extent that it gives such a remedy it is a remedial statute, irrespective of whether it limits the recovery to the amount of actual loss sustained or as cumulative damages as compensation for the injury. Stanley v. Horton, 9 Price, 301; Aylsworth v. Curtis, 19 R. I. 517, 521, 34 A. 1109, 33 L. R. A. 110, 61 Am. St. Rep. 785; Mitchell v. Clapp, 12 Cush. 278; Yarter v. Flagg, 143 Mass. 280, 9 N. E. 649; Gardner v. N. Y. & N. E. R. R. Co., 17 R. I. 790, 24 A. 831; Frohock v. Pattee, 38 Me. 103; Woodward v. Alston, 12 Heisk. (Tenn.) 581; Mitchell v. Hotchkiss, 48 Conn. 9, 40 Am. Rep. 146; Yearteau v. Bacon's Estate, 65 Vt. 516, 27 A. 198; Sedgwick's Statutory Law (2d Ed.) 32; Potter's Dwarris on Statutes, 74; Endlich on Interpretation of Statutes, 333. But in so far as the statute authorizes a third person, not the loser, to recover treble damages or the money lost, the statute is penal. Cole v. Groves, 134 Mass. 471; Aylsworth v. Curtis, 19 R. I. 517, 520, 34 A. 1109, 33 L. R. A. 110, 61 Am. St. Rep. 785.

[6] Is the fact that the statute is remedial and not penal sufficient in itself to make the cause of action survive? We do not think it is. It is undoubted that under remedial statutes, which give a cause of action which otherwise would not exist, it has been held that the cause of action survived. But those cases seem to be cases in which the

right to recover can be asserted in an action of contract. Such were the cases of Anderson v. Metropolitan Stock Exchange, 191 Mass. 117, 121, 77 N. E. 706; Motlow v. Johnson, 151 Ala. 276, 44 So. 42; Cochran v. Wiechers, 119 N. Y. 399, 23 N. E. 803, 7 L. R. A. 553; Koski v. Pakkala, 121 Minn. 450, 141 N. W. 793, 47 L. R. A. (N. S.) 183; Garrigan v. Huntimer, 20 S. D. 182, 105 N. W. 278.

In United States v. Dewey, 39 F. 251, Judge Wallace, sitting in the Circuit Court for the Southern District of New York, sustained an action against the executor of an assignee in bankruptcy who had wrongfully paid out of the assets in his hand to other creditors of the bankrupt, than the plaintiff, the sum of $32,000. The remaining assets of the bankrupt were insufficient to pay the debt of the plaintiff by more than $32,000. The property. of the bankrupts came to the assignee by force of the bankruptcy statute, and was in the nature of a trust fund in the hands of the assignee for the payment of the debt of the plaintiff, and he was bound to pay its debt first out of the proceeds of the property. Judge Wallace said: "The action is in assumpsit for money had and received, and is founded upon a breach of duty of the assignee, and therefore does not abate. At common law, even when the cause of action originates in tort, and trover or case would lie, but the facts permit an action of assumpsit, if the plaintiff elects to bring assumpsit, the action does not abate."

Causes of action under remedial statutes, to recover for torts, abate according to the established rules of the common law the same as ordinary common law actions, unless they are saved by a statutory provision. 1 C. J. 210, § 407.

[7] We have heretofore considered this case as though the injury complained of was one done to the property of the plaintiff. But the Sherman Act in section 7 gives a cause of action to any person who is injured in his business or property by any other person or corporation by reason of anything forbidden by the act. We have in effect held that within the meaning of the act a man is not injured in his property unless something which he actually possesses is taken from him. or is damaged. But the language of the statute shows, and the Supreme Court in Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U. S. 390, 396, 397, 27 S. Ct. 65, 51 L. Ed. 241, recognized a distinction between property and business. That a real and important distinction be-

tween the two things exists is clear. See Atlantic Postal Telegraph-Cable Co. v. City of Savannah, 133 Ga. 66, 65 S. E. 184. And the courts have sustained the right to tax a business in addition to the right to tax the property used in the business. Goldsmith v. Huntsville, 120 Ala. 182, 24 So. 509. Occupation taxes are not property taxes, and therefore are not subject to restrictions imposed upon property taxation by statutes and state Constitutions. Society for Savings v. Coite, 6 Wall. 594, 18 L. Ed. 897; Provident Institution v. Massachusetts, 6 Wall. 611, 18 L. Ed. 907.

In the matter of taxation it is well established law that a distinction exists between business and property. Thus in City of Newton v. Atchison, 31 Kan. 151, 1 P. 288, 47 Am. Rep. 486, it was said: "There is no inherent vice in the taxation of avocations. On the contrary, business is as legitimate an object of the taxing power as property."

In Atlantic Postal Telegraph-Cable Company v. Mayor and Aldermen of Savannah, supra, the court indicates the distinction between business and property. It says: "The sending and receiving of telegrams is as much a business as * * * the issuance of insurance policies, or the purchase and sale of cotton. It is not the cotton which is the business, or the policies, or the telegraph blank. These are indicia of that in which the individual engages. The business is the occupation, the engaging, the doing of the varied commercial acts, and the taking of the requisite steps from which result conclusions and conditions." And it is there said that "business," in the sense in which it is used in taxing laws, does not generally mean property. "It means the activity, the energy, the capacity, the opportunities by which results are reached—a condition rather than fixed tangible objects for which conditions arise."

That "property" and "business" do not mean the same thing also appears in Flint v. Stone Tracy Co., 220 U. S. 107, at page 145, 31 S. Ct. 342, 347 (55 L. Ed. 389, Ann. Cas. 1912B, 1312), where the court in a unanimous opinion said: "It is therefore apparent, giving all the words of the statute effect, that the tax is imposed, not upon the franchises of the corporation irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof." It was held that a substantial and not a nominal difference existed between a tax on property

and a tax on doing business. The one was a direct tax and the other an indirect one in the nature of an excise, and therefore did not have to be apportioned. And see Provident Institution v. Massachusetts, 6 Wall. 611, 631, 18 L. Ed. 907.

In Bræutigam v. Edwards, 38 N. J. Eq. 542, 545, the Vice Chancellor pointed out that business did not mean stock, or machinery, or capital and the like. "While business cannot be done without these, in commercial language it is as distinct from them as labor is from capital. In speaking of the business that may be done by a merchant, banker, or railroad company, the mind does not contemplate or dwell upon the character or quality of the means used, but of the operations, whether great or small, complex or simple, numerous or few, for one or the other of these conditions may arise from much or little stock or capital. In other words, 'business' does not mean dry goods, nor cash, nor iron rails and coaches. Business is not the lifeless and dead things, but the activities in which they are employed."

The Constitution declares that private "property" shall not be taken for public use without just compensation; and it has been generally held that business or the good will thereof is not "property" within the meaning of the statutes relating to eminent domain. Oakland v. Pacific Coast Lumber, etc., Co., 171 Cal. 392, 398, 153 P. 705; Sawyer v. Commonwealth, 182 Mass. 245, 65 N. E. 52, 59 L. R. A. 726; Kennebec Water District v. Waterhill, 97 Me. 185, 54 A. 6, 60 L. R. A. 856. So that in the absence of some statutory provision therefore one whose land has been taken or injured cannot recover compensation for loss or interruption of business. Whiting v. Commonwealth, 196 Mass. 468, 470, 82 N. E. 670; Allen v. Commonwealth, 188 Mass. 59, 74 N. E. 287, 69 L. R. A. 599; Bailey v. Boston & Providence Railroad, 182 Mass. 537, 66 N. E. 203; Matter of New York Board of Water Supply, 211 N. Y. 174, 105 N. E. 213; West Chicago Park Commissioners v. Boal, 232 Ill. 248, 83 N. E. 824; Opelousas, etc., R. Co. v. St. Landry Cotton Oil Company, 121 La. 796, 46 So. 810; Spring City Gaslight Co. v. Pennsylvania Schuylkill Valley Railroad Co., 167 Pa. 6, 31 A. 368; Richmond, etc., R. Co. v. Chamblin, 100 Va. 401, 41 S. E. 750. If "business" and "property" are synonymous terms, the right to compensation in such cases would not be dependent upon statutory provisions. And in Matter of Board of Water Supply, supra, which was a condemna-

tion proceeding in which damages were claimed for decreased value of a business by the taking of land, the New York Court of Appeals said: "The appellants' claim for damages is wholly dependent upon statutory provision."

In Nichols on Eminent Domain (2d Ed.) vol. 1, § 124, it is said that an established business "has never been held to be by itself property in the constitutional sense."

[8] In the construction of statutes one of the cardinal rules is that effect is to be given, if possible, to every word. Massachusetts Loan & Trust Company v. Hamilton, 88 F. 588, 32 C. C. A. 46; Mutual Life Ins. Co. v. Champlin (C. C.) 21 F. 85; Ogden v. Strong, Fed. Cas. No. 10460; Strode v. Stafford Justices, Fed. Cas. No. 13537. In order to do this in this case, inasmuch as it appears that the word "business" and "property" have a separate and distinct meaning in the law, we must assume that Congress by the use of both words did not use them tautologically by way of unnecessary repetition, but intended something more by including the word "business" along with that of "property." And in giving effect to the word "business," as something separate and distinct from "property," we are paying heed to the exact aim, scope, and object of the act, as we are bound to do in arriving at its real meaning. The aim and purpose of the Sherman Act was primarily to regulate the manner in which "business" should be carried on in interstate commerce; and in giving to the act the construction we do we give to it such a construction as tends to suppress the mischief and advance the remedy, according to the intent of the Congress as we understand it. The result reached does not extend the irrational rule of the common law, that a personal action dies with the person to actions given by the Sherman Act for injuries done to "business" of the nature complained of in this suit.

While one may not be injured in his "property," within the meaning of the act, by depriving him of an opportunity to add to the amount of his property by gains he might have made, so that the action ex delicto would not survive his death under the common law, yet it by no means follows that, in so far as the acts complained of injures a man in his business, the action which the Sherman Act gives for such injuries dies with the person and will not survive. A business in which one is actually engaged is something which he has in præsenti, and the destruction of that business deprives

him of something which is in esse. In the former case he has been deprived of none of his property, but only of what in futuro might have become his property.

[9] We are of opinion that under the Sherman Act, giving a cause of action to one injured in his business by acts done in violation of the statute, that cause of action survives, although a cause of action for similar acts alleged to have worked injury to one's "property" would not survive under the allegations in the complaint herein involved; the reason for the distinction being that the acts complained of do not directly affect the plaintiff's "property," but relate to the gains which the plaintiff expected to realize. Those acts relate simply to a loss of trade or profit. They did not diminish the plaintiff's "property," which was something already acquired. That which it hoped to acquire, but had not yet obtained, certainly did not constitute its "property" within the meaning of the statute, and so did not survive. But acts which deprive one of his trade and diminish his profits certainly directly affect his business and may destroy it, and we think that under such a statute as the Sherman Act the cause of action given for injuries to one's business survives.

In Jones v. Barmm, supra, we have seen it was held that an action to recover damages for an alleged injury to the plaintiff's business did not survive. But that action was brought under a statute of Illinois which provided for the survival of certain actions for injuries to the person and for injuries to real or personal property. The court pointed out that the cause of action alleged was not one for injuries done to the person, or to any real or personal property owned by the plaintiff, but was a damage to one's business. The Illinois statute did not, as does the Sherman Act, mention injuries done to business, and so an action for such injuries did not survive.

[10] Before concluding this opinion it may be proper to say that the measure of damages against the personal representative of a deceased tort-feasor is not always the same as the amount which might have been recovered against the decedent. The general rule is that, while in cases where the cause of action survives the same compensatory damages are recoverable against the personal representative as might have been recovered against the decedent, yet in such cases there is no right to punitive or exemplary damages. Sheik v. Hobson, 64 Iowa, 146, 19 N. W. 875; Edwards v. Ricks, 30 La. Ann. 926; Prescott v. Knowles, 62 Me. 277; Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682; Johnson v. Levy, 122 La. 118, 47 So. 422, 16 Ann. Cas. 978. Whether because of that general rule the executors of a defendant, in an action brought under the Sherman Act to recover treble damages for injuries done to the plaintiff's business, should apply for a severance of the action in case the deceased is one of several codefendants, and died after the suit was commenced, is a question which was not argued, and which it is not necessary on this record to decide.

Order reversed, and the District Court is directed to proceed in accordance with this opinion.

HOUGH, Circuit Judge (dissenting). With the larger part of the majority opinion I entirely agree, and think it demonstrates that this action abates as to any defendant deceased, unless abatement is prevented by some statutory provision. But I cannot agree that any statutory reason for nonabatement is found in section 7 of the Sherman Act; i. e., I consider the distinction drawn between the words "business" and "property" by the majority opinion to be quite illusory, or unreal.

That there is a difference in meaning or breadth of meaning between the words "business" and "property" does not assist decision in this case. Much property is not business, but all business is property; consequently under this statute I see no distinction between the two words, in so far as abatement of action is concerned. For this reason alone I dissent.