TOWN OF NEW CASTLE, Plaintiff,

v.

YONKERS CONTRACTING COMPANY,
INC., et al., Defendants.

STATE OF NEW YORK,
et al., Plaintiffs,

v.

YONKERS CONTRACTING COMPANY,
INC., et al., Defendants.

Nos. 88 Civ. 2952(CES),
90 Civ. 3779(CES).

United States District Court,
S.D. New York.

July 28, 1992.

Richard Kilsheimer, Kaplan & Kilsheimer, New York City, for plaintiff.

Michael S. Washor, New York City, for defendants.

MEMORANDUM DECISION

STEWART, District Judge:

Defendant Joan Nigro, the Executrix of the Estate of Peter Nigro ("the Executrix"), moves to dismiss the complaints in the above-entitled actions because the death of Peter Nigro terminated the claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, and under the Donnelly Act, § 340 of the New York General Business Law. In the alternative, the Executrix argues that the plaintiffs should only be entitled to actual damages, and not the treble damages permitted by statute. For the following reasons, the motion is denied.

## FACTS

These civil actions allege that seven corporations and twelve individuals, including Peter Nigro, conspired to rig bids and allocate territories for the sale and application of asphalt in Westchester County, New York. Peter Nigro was a defendant in the State of New York action since it was filed in 1990, and he was also a defendant in the New Castle action since its inception in 1988. Peter Nigro's involvement in these matters was as treasurer and part owner of Nigro Bros., Inc., a corporation in the asphalt business. He was also a defendant in a federal Sherman Act prosecution, *United States of America v. Yonkers Contracting Co., Inc., et al.*, 87 Cr. 450, and was ultimately acquitted after two jury trials.

Peter Nigro died on February 16, 1991. There were some initial procedural questions in this case regarding the substitution of an estate representative, in part due to a change in counsel; these issues were resolved in two orders dated June 21, 1991 and February 25, 1992. It is against this background that the Executrix now challenges her substitution as a party, as well as the amount of damages that can be recovered.

## DISCUSSION

■ The Executrix argues that her substitution should not be permitted because the cause of action abated with Peter Nig-

ro's death.[1] In support, the Executrix relies on *Sullivan v. Associated Billposters and Distributors*, 6 F.2d 1000 (2d Cir. 1925), a decision that made a distinction between antitrust actions claiming damages to property as opposed to those actions asserting damages to business. The argument is that because this case is essentially penal in nature, and there has been no business damage to the governmental entities who are the plaintiffs, these antitrust claims cannot be asserted against the Executrix of Peter Nigro's estate.

■ Contrary to these assertions, the Second Circuit's ruling in *Sullivan* supports the view that this cause of action survives the death of Peter Nigro. As fleshed out in a 1961 Southern District of New York decision, the *Sullivan* case expanded the scope of the types of claims that could go forward despite the death of the defendant:

> The opinion in *Sullivan* must be regarded as marking a new development in the law in its extension of the survival of actions against deceased defendants to situations where the plaintiff allegedly sustained "business" damages as a result of the defendant's wrongful conduct. A "benefit" was involved here as in those cases concerned with "property" damages.

*Banana Distributors, Inc. v. United Fruit Company*, 27 F.R.D. 403, 408 (S.D.N.Y. 1961). *Sullivan* does not stand for the proposition that damages to business survive, but claims for damages to property do not: it held, for the first time, that federal antitrust claims for either type of damage survive the death of the tortfeasor, because both types result in some type of benefit to the estate of the alleged wrongdoer. *Id.* at 408.

The allegations in this lawsuit clearly fall within the types of antitrust claims that survive the death of a defendant. The plaintiffs claim that the defendant was part of a conspiracy to fix prices and allocate territories in the asphalt business. This is a situation where there is a "claim that the estate of the decedent has been increased by profits ... wrongfully diverted from the plaintiff." *Sullivan, supra*, 6 F.2d at 1007. The fact that the plaintiffs are municipalities is of no moment. This lawsuit is not a governmental enforcement action. As the State of New York and the Town of Newcastle point out, they were purchasers of products from the defendants. Although they are not defendants' business competitors who were harmed by loss of business, these governmental entities paid for goods that allegedly were price-fixed. They were in the same position as any other purchaser who brings a private right of action under the antitrust laws. It is also fair to say that these allegations constitute a claim that the decedent's estate was enriched as a result of whatever artificially inflated profits were obtained as a result of the alleged conspiracy.

We conclude, as have many other courts, that the claims in both lawsuits survived the death of the defendant. *Sullivan, supra; Banana Distributors, supra; Rogers v. Douglas Tobacco Board of Trade, Inc.*, 244 F.2d 471, 183 (5th Cir.1957); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 560–61 (7th Cir.1986); *Vandervelde v. Put and Call Brokers & Dealers Association*, 271 F.Supp. 697 (S.D.N.Y.1967). The Executrix's attempts to distinguish these cases are not persuasive. The substitution of parties was appropriate.

■ In the alternative, the Executrix asserts that even if the plaintiffs prevail, the Estate should only be held liable for the actual damages caused by Peter Nigro, and cannot be charged with the treble damages available to antitrust claims. Although the issue was specifically not decided in *Sullivan*, the Executrix argues that the case law strongly suggests that an Estate would only be responsible for compensatory damages, and there is no entitlement to punitive or exemplary damages. *See Sulli-*

---

1. There is no dispute that the relevant procedural rule is "Substitution of Parties", Fed.R.Civ.P. 25(a), and that the substantive question of whether the action survives the death of a party is a matter of United States statutes and federal common law. *Moore's Fed. Practice*, ¶ 25.04[1] (1990).

*van, supra,* 6 F.2d at 1012; *Haskell v. Perkins,* 28 F.2d 222, 223–224 (D.N.J.1928), *rev'd on other grounds,* 31 F.2d 53 (3d Cir.1929), *cert. denied,* 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1007 (1929); *Rogers, supra,* 244 F.2d at 483. Although these cases support the view that treble damages may not be available against an estate, the purpose of the treble damages provision of the Clayton Act has been examined recently by the Supreme Court. Although there is a punitive element to the availability of these damages, the Supreme Court has held that the primary purpose of the provision is remedial:

> Section 4 ... is in essence a remedial provision. It provides treble damages to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." Of course, treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing ... It nevertheless is true that the treble damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy.

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 485–486, 97 S.Ct. 690, 696, 50 L.Ed.2d 701 (1977) (citations omitted). Other cases emphasize the remedial and compensatory nature of the treble damages provision in a variety of contexts. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 575, 102 S.Ct. 1935, 1947, 72 L.Ed.2d 330 (1982) (treble damages can be imposed on a principal for the acts of an agent); *Ethicon, Inc. v. Aetna Cas. and Sur. Co.,* 737 F.Supp. 1320, 1335 (S.D.N.Y.1990) (insurance company must indemnify insured for entire loss, including trebling of damages).

The Seventh Circuit reconciled the language of the cases upon which the Executrix relies with the recent pronouncements from the Supreme Court:

> The district court noted that there were cases in other jurisdictions to the effect that the death of a defendant abated a plaintiff's claim for treble damages, but

the court declined to follow them. Those cases, mostly quite old, are based on the notion that treble damages are exclusively penal in character and should not be assessed when the malefactor is no longer around to learn his lesson.

*Fishman v. Estate of Wirtz,* 807 F.2d 520, 560–561 (7th Cir.1986). In light of the statements from the Supreme Court, we agree with the Seventh Circuit that "the better rule is that ... the award of treble damages did not abate upon the death of [the defendant]". *Id.,* 807 F.2d at 561.

## CONCLUSION

The Executrix's motion to dismiss or to limit damages is denied.

SO ORDERED.