Chase, J.
 

 The appellants’ claim for damages is wholly dependent upon statutory provision. A reference to the statute under which the claim is filed, and of the statutes passed contemporaneously with it, is necessary to ascertain the extent to which the legislature intended to authorize the recovery of damages in cases where no such right existed at common law.
 

 The state water supply commission was organized pursuant to chapter 723 of the Laws of 1905. That act provides that a municipal corporation shall not have power to acquire, take or condemn lands for any new or additional sources of water supply until it has first submitted the maps and profiles therefor to said commission and until said commission shall have approved the same. The act provides in detail for submitting the maps and profiles to said commission and among other things it provides that they shall he accompanied
 
 “
 
 By a plan or scheme to determine and provide for the payment of the proper compensation for any and all damages to persons or property, whether direct or indirect, which will result from the acquiring of said lands and the execution of said plans.” It also provides that the commission shall determine whether the plans proposed are justified by public necessity, “ and whether such plans are just and equitable to the other municipalities and civil divisions of the state affected thereby and to the inhabitants thereof * * * and whether said plans make fair and equitable provisions for the determination and payment of any and all damages to persons and property, both direct and indirect which will result from the execution of said plans.” (Section 3.)
 

 By chapter 724 of the Laws of 1905, passed simultaneously with the act establishing the state water supply commission, provision was made for the appointment of
 
 *176
 
 a board of water supply of the city of New York with authority to provide an additional supply of pure and wholesome water for said city. Such board was thereafter appointed pursuant to said act, and after the necessary preliminary steps an application was made by it in behalf of the city of New York to the state water supply commission for its approval under the statute of its plan and scheme for acquiring land and property necessary for the construction and maintenance of a reservoir and its appurtenances in the Catskill mountains to provide for such additional supply of pure and wholesome water for said city. While that application was pending before said state water supply commission certain sections of chapter 724 of the Laws of 1905 were amended by chapter 314 of the Laws of 1906. Section 42 of said act was amended so as to read as follows:
 

 “The owner of any real estate not taken by virtue of this act and chapter seven hundred and twenty-three .of the laws of nineteen hundred and five or of any established business on the first day of June, nineteen hundred and five, and situate in the counties of Ulster, Albany or Greene, directly or indirectly decreased in value by reason of the acquiring of land by the city of New York for an additional water supply or by reason of the execution of any plans for such additional water supply by the city of New York under the provisions of this act and chapter seven hundred and twenty-three of the laws of nineteen hundred and five, their heirs, assigns or personal representatives shall have a right to damages for such decrease in value. The board of water supply of the city of New York may agree with such person as to the amount of such damages, and if such agreement cannot be made such damages, if any, shall be determined in the manner herein provided for the ascertaining and determining the value of real estate taken under the provisions of this act, and the commissioners shall not be limited in the reception of evidence to the rules regulating the proof of
 
 *177
 
 direct damages. * * * A person employed in a manufacturing establishment, or in an established business, or upon any lands and is not an owner or part owner thereof or of an interest therein, in the counties of Ulster, Albany and Greene, which manufacturing establishment, or established business is injured or destroyed, or which lands are taken or acquired under or because of the provisions of this act, who has been so employed continuously for six months prior to the first day of January, nineteen hundred and six, and who continues in such employment up to the time of such injury, destruction, taking or acquisition shall have a claim for damages against the city "of New York equal to the salary paid such employee for the six months immediately preceding the first day of January, nineteen hundred and six. Such damages may be determined by agreement with the board of water supply of the city of New York. In case such agreement cannot be made such employee may maintain an action against the city of New York in the Supreme Court to recover such damages, not however to exceed the sum of the wages paid him for the six months immediately prior to the first day of January, nineteen hundred and six.”
 

 Chapters J23 and 124 of the Laws of 1905 as contemporaneous acts should be read together, and the board of water supply of the city of New York was right in assuming that it was necessary for it to obtain the approval of the state water supply commission to its plan to provide for an additional supply of pure and wholesome water for the city of New York, and the execution thereof.
 

 In the decision by the state water supply commission of said application, which decision is dated May 14,1906, the commission refer to the amendments of the statute in 1906 and say:
 
 “
 
 The amendments were prepared after consideration of the evidence produced and arguments made by the attorneys representing the objectors upon the hearing. Also after a personal inspection of some of the territory proposed to be taken and the study of the laws
 
 *178
 
 of the state of Massachusetts and the method adopted by the Metropolitan water board of that state having similar questions and the commission believes that the law as now amended makes fair and equitable provisions for the determination and payment of any and all damages both direct and indirect which may result from the execution of said plans, and that it also protects Mew York from paying exorbitant and improper damages.”
 

 The principal dam and reservoir constituting a part of the new Oatskill Mountain water supply system for the city of Mew York and commonly known as the Ashokan dam and reservoir, is nearly completed. It will occupy a territory about fourteen miles in length and about two miles in width and will contain 15,221 acres of land. It includes a strip of land about 1,000 feet in width around what will be the exterior water line of the reservoir when filled. To make this vast reservoir possible it has been necessary to acquire by purchase or condemnation not only such vast area of land, but several hundred dwellings and buildings, including shops, stores, mills, schools and churches which were standing thereon. It has resulted in removing from said territory about 2,000 inhabitants who were living in the seven villages and the scattered habitations within its boundaries and all the established and other businesses which were theretofore conducted thereon.
 

 The mother of the appellants was the owner of a farm of 106 acres situated in said territory, which was taken by the city of Mew York by condemnation and she was awarded and paid therefor $17,746.53. The appellants had had possession thereof since 1895 under an agreement with their mother by which they supported her and gave to her fifty dollars per year and paid the taxes on the farm and the insurance on the buildings and kept the same in repair. Their occupancy, so far as appears, was a tenancy at will. There were on the farm, buildings suitable to accommodate sixty or seventy hoarders, and
 
 *179
 
 barns for the farm, and the-livery which was used in connection with such summer boarding house business. The boarding house and livery business continued about three months in the summer of each year. The appellants continued in the possession of the buildings until May, 1908.
 

 Some of the preliminary questions involved on this appeal have been settled by the decision in
 
 People ex rel. Burhans
 
 v.
 
 City of New York
 
 (198 N. Y. 439). The right to damages for a decrease in the value of an established business is not confined to businesses established upon lands not condemned. Damages for a decrease in the value of an established business may be recovered although the lands on which the same is conducted have already been condemned and the city of New York has paid therefor. A municipality which asks the legislature for a privilege which is granted subject to specified conditions cannot accept the grant and reject the conditions.
 

 In the proceeding by the city of New York to acquire title to the Bishop farm the appellants appeared by counsel and were given an opportunity to assert their ownership, if any, of an estate or right, legal or equitable, in said farm. They declined to assert any interest therein and .they also declined to present to the commission a claim for damages by reason of a decrease in the value of their alleged established business and asserted that they would present such claim to a commission when appointed to hear claims of that kind.
 

 The statute contemplates a proceeding to condemn the fee of the real property required by the city (Laws of 1905, chapter 124, sec. 7), and a proceeding to determine the damages arising from a decrease in the value of. an established business. (Laws of 1905, chapter 724, sec. 42, as amended by chapter 314 of the Laws of 1906.) These proceedings are separate and distinct although there seems to be no reason why a commission cannot be named with authority to hear claims presented under both statutes. If commissioners had been appointed to
 
 *180
 
 hear claimants of both classes it would have resulted in .particular instances like the claims of the Bishops, mother and sons, in economy of time and perhaps in a more satisfactory adjustment of the damages, but where one commission is appointed solely for the purpose of hearing claims for damages by reason of the city taking the fee of real property it is not legal error if a claimant refuses to submit his claim for damages arising from a decrease in the value of an established business to such commission, and reserves his claim for such damages for consideration by a commission appointed with express authority to hear such claims. The appellants acquiesced in their mother asserting title to the farm and of obtaining an award therefor based upon her ownership of the absolute fee of the land free and clear of all incumbrances. They should not now be heard in support of any claim except such as is wholly independent of the farm as such and of any leasehold or other interest therein.
 

 The boarding and livery business was conducted on the farm, but that business as a business was owned by the appellants, while the farm as a farm was owned by their mother. It was held as we have seen in the
 
 Burhans Case (supra)
 
 that the statute contemplates a payment of the damages for a decrease in the value of an established business although' the real property on which the business is conducted is itself condemned and taken by the city. The decrease in value of such an established business must be determined by the best evidence available and it must be estimated in a case like the one now considered in view of the -uncertain tenure of the appellants holding of the lands on which the business was conducted and of the profits, if any, in conducting the business as a boarding house and livery business.
 

 The statute contemplates that the city shall pay a fair and equitable amount for any and all damages to persons and property, both direct and indirect, which result from the execution of the plans for a water sup
 
 *181
 
 ply. It is expressly provided that the commission shall not be limited in the reception of evidence to the rules regulating the proof of direct damages. The liberal spirit everywhere apparent in the statute should be exercised in determining damages to an established business, but the damages allowed should nevertheless be real and not speculative or merely fanciful. The intention of the statute is to compensate persons deprived of, or injured in a business that had become fixed and established. It is not the purpose of the statute to give gifts, or grant pensions. Where an established business is decreased in value without being wholly destroyed the best evidence procurable to show the decrease must be produced. When, as in this case, the decrease amounts to a total destruction of the" business at the place where it has been conducted, it is essential in showing its value to ascertain the profit that was derived from 'it. If such business actually produced a profit it can be shown although it has no established market value as a business.
 
 (Earle
 
 v.
 
 Commonwealth,
 
 180 Mass. 579.) A farming business may be an established business within the meaning of the statute.
 
 (Allen
 
 v.
 
 Commonwealth,
 
 188 Mass. 59.) It is not necessary to consider whether there was an established farm business conducted on the Bishop farm within the meaning of the statute. Mo claim is filed for any such established business." The claim now before us for consideration is based upon an established boarding house and Every business.
 

 Treating the claim as such, we refer to the questions submitted to us.
 

 First.
 
 The capital invested in a business represents an expense equal to the market rate of interest thereon. The appellants did not own the real property, but should charge against the business the rental paid therefor as far as it pertains to the boarding house and livery business. They should also charge against the business, interest on the capital invested by them in personal property used
 
 *182
 
 therewith at the market rate and a reasonable amount for the depreciation of such personal property.
 

 Second.
 
 In determining the profit in maintaining a business there should be charged against it the reasonable cost or value of all labor necessary to maintain it. The fact that such labor is performed in part by the owner and by members of his household does not exempt such labor from consideration in determining the value of an established business within the meaning of the statute under consideration. (See
 
 Sawyer
 
 v.
 
 Commonwealth,
 
 185 Mass. 356.)
 

 Third.
 
 The market value of the farm produce used at the boarding house and fed to the horses used in the livery business constituted an expense to the established business the same as if such produce bad been purchased from other sources. If such produce had not been taken from the firm for the boarding house and livery business it could have been sold for its reasonable value in the market. It is not the profits of the farm that are now under consideration. If the áppellants had presented a claim for the profits of the farm as an established business, assuming that it could have been maintained as an established business, it would have been necessary to have charged against the proceeds of the farm all of the expenses of the year in its maintenance. As a boarding house and livery business the appellants are only required to charge against the business the expense of maintaining it as such wholly independent of the farm. The proceeds of the farm, therefore, must be charged against the established boarding and livery business to determine its value.
 

 Fourth.
 
 If a person making a claim for decrease in the value of an established business is fortunate in developing a business at another place or obtaining favorable employment it cannot be used to mitigate or lessen the damages for which the city of New York is liable. A claim for such damages should he ascertained as of the date when the established business is taken or decreased,
 

 
 *183
 

 Fifth.
 
 An established business may exist upon land condemned wholly independent of the lands so condemned. The value of such business and its permanency are questions of fact to be determined by the commission.
 

 We are of the opinion, therefore, that the Special Term was right in refusing to confirm the -report of the commission herein and that the issues arising from the claim by the appellants and its dispute by the city of New York should be again considered by a commission for the purpose of determining what amount, if any, should be paid the appellants by reason of their ownership of the boarding and livery business at the time when the real property was taken by the city of New York pursuant to the statute.
 

 The first, second, -third 'and fifth questions certified should be answered in the affirmative, and the fourth question in the negative.
 

 The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in both courts.
 

 Willard Bartlett, Oh. J., Werner, Hiscock, Collin, Hogan and Miller, JJ., concur.
 

 Order reversed, etc.