In re BOARD OF WATER SUPPLY OF CITY OF NEW YORK.
In re MASTEN.

(Supreme Court, Appellate Division, Third Department.   January 5, 1916.)

EMINENT DOMAIN ⬤➡107—COMPENSATION—MEASURE OF DAMAGES—INJURIES
TO BUSINESS.

    Where claimant's property was taken for an aqueduct and he claimed damages for injury to his boarding house business, it was improper in determining his damages to consider imaginary profit to him in boarding his minor children, who paid no board.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 291, 293; Dec. Dig. ⬤➡107.]

Appeal from Special Term, Ulster County.

Proceeding by the Board of Water Supply of the City of New York to acquire real estate under Laws 1905, c. 724, as amended by Laws 1906, c. 314.   From an order confirming the award of the Business Damage Commission for property damage in favor of Zachariah G. Masten, the City of New York appeals.   Reversed, and new trial granted, on conditions.

See, also, 211 N. Y. 174, 105 N. E. 213.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Frank L. Polk, Corp. Counsel, of New York City (William McM. Speer, of New York City, of counsel), for appellant.

Jenkins & Shufeldt, of Kingston (James Jenkins, of Kingston, of counsel), for respondent.

HOWARD, J.   This is a claim against the city of New York for damages to a boarding house and livery business.   The claimant was originally the owner of a farm consisting of 114 acres of land in Ulster county.   The city of New York penetrated this farm with its aqueduct and appropriated 9½ acres of the land together with certain buildings.   Before the advent of the Ashokan Reservoir into Ulster county, this farm of the claimant's had been assessed by the town authorities at $2,700.   For the 9½ acres taken the claimant was awarded $13,000.   After the land was taken by the city, the claimant had about 105 acres of the farm left.   The original farmhouse had been enlarged and remodeled by the claimant, and at the time of the construction of the aqueduct the claimant was conducting a summer boarding house business on the premises.   This business began about 20 years ago and was conducted in connection with the ordinary farming business.   The summer boarding and livery business gradually increased until 1908.   As a result of the invasion of his farm by the city, the claimant alleges that his boarding house business has been injured.   The commission before which the claim was tried has allowed the claimant $2,819.35.

This case was tried once before, and the commission awarded the claimant $1,200.   This award was set aside and a new trial granted.   Subsequent to the first trial an opinion was handed down by the Court

of Appeals in what is known as the Bishop Case. 211 N. Y. 174, 105 N. E. 213. Certain rules applicable to these business damage claims were, in the Bishop Case, established for the first time. Applying these rules to the evidence produced on the first trial of this case, it is doubtful whether any award could have been made to the claimant. The Court of Appeals held in the Bishop Case that many items were properly chargeable against a boarding house business which the commission in these cases had previously held not to be chargeable. For instance, the value of the services of the claimant and his wife and children were held chargeable against the business, the market value of the farm products, interest on money invested in the business, the expense of maintaining farm horses employed in conveying boarders from place to place, and various other items. Therefore on the second trial of this claim it became necessary to introduce other and different evidence from that presented at the first trial, otherwise there could be no recovery.

The evidence which has been introduced is different, but the counsel for the city of New York contends that it is untruthful and was introduced expressly to meet the necessities imposed by the Bishop Case. And the principal contention of the appellant is that the claimant is guilty of flagrant and deliberate falsehood and should not be permitted to profit by his own perjury. A careful perusal of the record leads us to the conclusion that there are grave and substantial variances between the evidence of the claimant on the first trial and his evidence on this trial, but we are not persuaded that the discrepancies are the result of a deliberate and malicious purpose to swear falsely. In undertaking to produce some sort of figures which might furnish a basis for computation, the claimant became hopelessly tangled in a maze of uncertain data. The accounts of this boarding house business, which evolutionized gradually from farming into boarding, were not managed with the accuracy which characterizes a mercantile establishment. The farming business and the boarding house business were to a considerable extent mixed, and perhaps the claimant undertook in the first instance to do the best he could to supply facts and figures. But the Bishop Case made accuracy more necessary; and whatever may have produced the confusion it is certain that the claimant's testimony is full of contradictions, inaccuracies, and uncertainties.

Appellant's counsel contends that this is a case for the grand jury; but, although we do not agree with his contention, we are impressed with the idea that the claimant put forth strenuous efforts to make the second trial fit the law of the Bishop Case. The commission, we think, also fell into many errors and several absurdities. The commission, for instance, assumed that the claimant made a profit out of boarding his own children, even though they, in fact, paid no board. In computing the profits which came to him from his boarding house business, the commission allowed the claimant $6 a week each for the board of two sons and $3 per week each for the board of three small daughters. This imaginary income made a total of $272, which was added to the gross receipts of the business. This is one of the absurdities to which we refer. No attempt has been made by the claim-

ant's attorney to explain this item and it is beyond our comprehension to understand how a man can make money out of boarding his own children, or, in fact, out of other persons, if they do not pay board. But, notwithstanding this and several other missteps, we do not think the commission deviated materially from the correct theory in attempting to compute the profits of the business. We are not so much impressed by the errors into which the commission fell as by the unsatisfactory character of the evidence on which the award is based.

We have not undertaken to figure out the exact amount which we think should have been awarded to the claimant, for we disagree with the appellant's counsel when he says that the matter "is simply an arithmetical one." It does not in our opinion reduce itself to a question of arithmetic. If we were able to separate the figures that are absolutely reliable from those which are wholly incredible, it might be possible to figure the award out to a mathematical certainty; but our examination of the record convinces us that this cannot be done. We are persuaded, however, that the claimant did have an established boarding house and livery business from which he was making a substantial profit before it was interrupted by the Ashokan acqueduct. This business seems to have been very considerably injured, if not destroyed, by the city of New York, and we think justice would be substantially meted out to both litigants if the claimant were given $1,000.

Therefore in view of the uncertainty in the evidence, and the impossibility of making a definite computation, we direct that the order be reversed, as against the weight of evidence, and a new trial granted before some commission, other than the one before which this trial was had, unless the claimant consents to accept $1,000, in which event the order as so modified should be affirmed, without costs. The court disapproves of the finding that the damages were $2,819.30. All concur, COCHRANE, J., in result.