In the Matter of ARTHUR C. FORD et al., Constituting the Board of Water Supply of the City of New York, Appellant-Respondent, Relative to Acquiring Title to Real Property for and on Behalf of the City of New York, in the County of Delaware, for the Purpose of Providing Additional Water for the City of New York. ORLE P. CHURCH et al., Respondents; ROCK ROYAL COOPERATIVE, INC., et al., Respondents-Appellants.— COOKE, J.

CLAIM OF CAMP MILLING, INC.

Claimant, a dealer in feed and other farm supplies and with its main place of business at Walton, had a store outlet at Cannonsville for many years up to 1953 when the operator severed his relationship. Claimant, however, continued to service the area and its truck driver not only delivered merchandise but also acted as salesman. Because of the taking many of its customers were lost. Due to the destruction of some of its records, assertedly in a 1965 fire, claimant was unable to furnish a breakdown of its Cannonsville area sales prior to 1960

but did supply other evidence. Based on proof of average gross sales of $25,000 at Walton to the Cannonsville area and average gross sales of $62,000 at the Cannonsville store, as well as the respective net profit margins of 9.01% and 8.08% in each operation, the commission found that claimant lost $2,250 a year at its Walton store and $5,000 a year in the Cannonsville area and awarded $38,000 for the decrease in the value of claimant's business. Since the award has support in the record and no reason appears to disturb the commission's judgment, that portion of the order confirming the award for business damages to Camp Milling, Inc. should be affirmed.

### CLAIM OF ARNOLD M. GRIFFIN

Mr. Griffin, an attorney specializing in title searches and abstracts and with the bulk of his work in Delaware County, testified that since 1954 he had lost $16,715 in business in three towns because of the taking. The commission so found and awarded him $7,500. From his income tax returns and a tabulation of work billed in said towns, it was shown that his gross income, net profit and business billed in said area increased steadily from 1955 through 1963. For instance, his net profit in 1955 was $1,617, while in 1963 it was $17,708. It was not proved with the necessary degree of certainty that these increases would have been greater had it not been for the takings (cf. *Matter of Ford* [*First Nat. Bank Downsville*], 28 A D 2d 633, affd. 22 N Y 2d 834). His attempt to prove that his practice in the affected area declined thereafter is entirely too speculative in the light of his peak billings therein during 1957–1962. That portion of the order confirming the award for business damages to Arnold M. Griffin should be reversed, on the law and the facts, and the claim dismissed.

### CLAIM OF DELAWARE TELEPHONE COMPANY, INC.

Claimant operates out of Walton and serves a portion of Delaware County. It introduced evidence indicating that it lost 96 subscribers and that each subscriber represented $77.66 a year in gross receipts. Although the number lost was disputed, the commission found that 96 were listed as lost and that claimant gained 28 new subscribers in taking over another company's services and awarded claimant $32,000. Although claimant's gross revenues have increased, its net income has fluctuated from a low $19,531 in 1960 to a high of $44,730 in 1963, it having been $6,245 in 1955. While maintenance expenses have fluctuated and officers' salaries have increased, they bear no relation to the net income fluctuation and it is clear here that some loss was due to the takings (cf. *Matter of Ford* [*Siska*], 24 A D 2d 14, 18, affd. 22 N Y 2d 834). There is little doubt but that the increase in gross revenues was due to additional subscribers in other areas served by claimant (cf. *Matter of Board of Water Supply* [*Bishop*], 211 N. Y. 174, 186). It appears that the commission may have arrived at the award by applying a multiple of slightly less than five to $6,834, the alleged yearly gross loss, but, if on income, the award must be based on net (*Matter of Ford* [*Greenman*], 33 A D 2d 965). Applying claimant's profit margin of 9.4% to $77.66, the gross annual revenue for each subscriber, and multiplying $7.30, the figure derived, by 64, the net subscriber loss, yields $467.20. There was testimony that it would take 30 to 35 years to build up this business. Multiplying $467.20 by 30, we arrive at $14,016. That portion of the order confirming the award for business damages to Delaware Telephone Company, Inc., should be modified, on the law and the facts, to reduce the award to $14,016, and, as thus modified, affirmed.

## CLAIM OF ROCK ROYAL COOPERATIVE, INC.

Claimant is a dairy cooperative with a milk plant in the Town of Rock Royal, Delaware County. Finding that it lost 31 of its 130 dairy farmer members and that this amounted to a partial destruction of its business, the commission made an award of $41,000. Inasmuch as a co-operative corporation is classed as nonprofit (Cooperative Corporations Law, § 3), in computing claimant's "profits", this is calculated as "undistributed receipts" less expenses or "net retained proceeds" (*Matter of Huie* [*Dairymen's League Co-op. Assn.*], 7 A D 2d 24, 27). Net retained proceeds were $20,106.63 in 1954, rose to a high of $48,616.78 in 1956 and dropped to $12,900.91 in 1962. The 31 farmers lost represented 22.6% of claimant's total business. Utilizing regular net profit and patronage dividends as net retained proceeds, claimant's average annual net was $34,313.27, 22.6% of which is $7,754.80. In our opinion the award of $41,000 should be reduced to $31,019. That portion of the order confirming the award for business damages to Rock Royal Cooperative, Inc. should be modified, on the law and the facts, to reduce the award to $31,019, and, as thus modified, affirmed.

## CLAIM OF GEORGE F. DEMEREE & SON, INC.

Claimant, the owner of an automobile dealership with operations at Bainbridge, Deposit and Greene, purchased a parcel of real property at Deposit in 1951 and sold it in 1958. The commission awarded $1,500 for indirect real estate damages and, based on claimant's net taxable income, $11,200 for business damage. There was proof that, due to the takings, claimant lost 139 customers at its Deposit office and 16% of its total business. 16% of $12,047, claimant's net taxable income for 1956, is $1,927. A capitalization rate of 6 results in $11,562. Taken with expert testimony as to the value of the business, this supports the award. Regarding the indirect real estate award, the commission's after value of $23,000 was the actual sales price of the property and its before value of $24,500 was within the range of testimony (cf. *Kastelic* v. *State of New York*, 29 A D 2d 803, 804). As to the business damage claim, filed on October 18, 1961, the city raises the statute of limitations — "within three years from the date of the filing of the oaths of the commissioners appointed after the acquisition by the City of New York of the real estate, the acquisition of which is claimed to be the direct or indirect cause of damage, or within three years from the execution of the plan or work, the execution of which is claimed to be the direct or indirect cause of damage" (Administrative Code of City of New York, § K51–18.0). In *Matter of Huie* (*Tweedie*) (18 A D 2d 437), it was held that the statute began running "upon completion of the last portion of the project which contributed to respondents' damages". Since the last portion of the taking which contributed to claimant's damages occurred in 1962, the claim was filed timely. That portion of the order confirming the award for business damages and for indirect real estate damages to George F. Demeree & Son, Inc. should be affirmed.

## CLAIM OF CARLEY BROOK LUMBER COMPANY

This partnership operated a saw mill at Rock Rift, New York. On August 31, 1955 it purchased the mill, together with all rights of the sellers to a lease covering the site and running to January 1, 1956, and commenced operations on September 1, 1955. Amalia Obermeier, who owned the real property, deeded it in 1958 to the City of New York, which served upon the partnership a notice

to vacate dated November 8, 1961, and the partnership left the premises within 60 or 90 days thereafter. The commission awarded $12,500. Claimant's contention that the award should be $150,000 based on expert testimony that this was the value of the business in 1961 is unpersuasive, particularly in the absence of title or leasehold, the commission having been entitled to reject it and value the business damage according to accepted standards. There is, however, no support in the record for an award of $12,500. According to tax returns, the average net taxable income for the mill was $3,807 and there was testimony that it would take eight to ten years to establish a profitable saw mill business. It actually took six years to develop the business and to say, on this record, that the profits would have been more had the business continued beyond that period would be speculative and an attempt to measure the decrease in business value by hypothetical future profits (*Matter of Ford [Downsville]*, 28 A D 2d 633, affd. 22 N Y 2d 834, supra). Applying a multiple of six, representing the actual life-span of the business (cf. *Matter of Board of Water Supply [Bishop]*, 211 N. Y. 174, 184, supra; *Matter of McMullen*, 92 Misc. 637, 647; 19 N. Y. Jur., Eminent Domain, § 188), to the average net annual income of $3,807, we arrive at $22,842. That portion of the order confirming the award for business damage to Carley Brook Lumber Company should be modified, on the law and the facts, to increase the award to $22,842 and, as thus modified, affirmed.

### CLAIM OF EDWARD W. HILTON

Claimant, the owner of a gas and oil business in an area including the Cannonsville Reservoir and selling to service stations and individuals, submitted proof that he had lost two service stations and 33 individuals due to the taking. The commission awarded $16,000. Claimant's average annual gross from lost customers was $29,877, representing 29.7% of his average annual total gross. 29.7% of the average net profit of $11,101 is $3,297. Applying the capitalization rate of 5 amounts to $16,485. While claimant's gross receipts increased from 1955 to 1963, his net profits declined over 300% at the same time his cost of goods increased nearly 100% and his other expenses increased about 50%. That portion of the order confirming the award for business damages to Edward W. Hilton should be affirmed.

### CLAIM OF WILLIAM B. MELNICK, DOING BUSINESS AS VOGUE SPECIALTY SHOP

Claimant, the owner of a clothing store in Walton, introduced evidence that the takings caused him to lose 126 customers, representing $33\frac{1}{3}$ to 40% of his business and causing him to liquidate his business in 1959. The city's argument that he lost only 13 customers presented a question of credibility for the commission's resolution, as did his health problems of 1958 and a previous award to claimant for lost business due to takings for the Pepacton Reservoir. The commission awarded $19,500. Utilizing the three years prior to taking, claimant's average annual net profit was $5,864, one-third thereof being $1,955. To reach the award as made would require a capitalization rate of 10 which is excessive and not supported by the record. Halving it results in a more reasonable award of $9,775. That portion of the order confirming the award for business damages to William B. Melnick, doing business as Vogue Specialty Shop, should be modified, on the law and the facts, to reduce the award to $9,775 and, as thus modified, affirmed.

## CLAIM OF BASSIN DEPARTMENT STORE, INC.

Claimant, the owner of a department store at Deposit purchased in 1950. offered proof showing the loss of 322 customers who did an average annual gross volume of $72,450. While gross sales and gross profits were stable, if not increasing. from 1956 to 1963. the average annual net profit before the taking was $3.705 and, after the taking, said item decreased to $1,824. The commission awarded $26,000. The lost customers represented 39% of claimant's annual gross. Applied to claimant's average annual net prior to taking of $3.705, it yields $1,445. This is borne out by claimant's profit margin, prior to taking. of 2% as applied to the volume of business allegedly lost. The use of a 7 multiple. justified by the more substantial operation, produces $10,115. That portion of the order confirming the award for business damages to Bassin Department Store, Inc. should be modified. on the law and the facts, to reduce the award to $10,115, and, as thus modified, affirmed.

## CLAIM OF ROBERT D. AND MYRTLE M. SEIBERT

Robert D. Seibert and Myrtle M. Seibert were the owners of a parcel of real property at Walton, upon which the former operated a service station business. The commission awarded $2,500 for indirect real estate damages and $8,600 for business damages. The award for indirect real estate damages was proper, the commission having accepted the testimony of petitioner's expert as to after value and its before value being within the range of testimony. Each expert considered comparables. The city is correct in its contention that because the gross receipts and profits increased. as did the cost of goods and expenses. there can be no business damage award, the decline in the net profits being attributable solely to increased expenses. Expenses increased at a rate more than double that of the rate of decrease in net profits. There was a steady increase in actual business (cf. *Matter of Ford [Downsville]*, 28 A D 2d 633, affd. 22 N Y 2d 834, *supra*). That portion of the order confirming the award for business damages to Robert D. Seibert and Myrtle M. Seibert should be reversed. on the law and the facts. and that portion of the claim dismissed. That portion of the order confirming the award for indirect real estate damages to said parties should be affirmed.

## CLAIM OF CORTLAND O. AND RUTH C. RAYMOND

Cortland O. Raymond and Ruth C. Raymond owned premises at Deposit in which they lived and, from a concrete block building thereon, the former operated an electrical contracting and repair business. The commission awarded $6,400 for business damages and $1,200 for indirect real estate damages. Income tax returns showed that the total business receipts and net profits fluctuated from year to year, with a general upward trend. The average annual net profit for 1955 and 1956 was $2,354 as against an average thereafter of $2,406. In 1958 and 1960–1962, net profits were higher than at any time prior to taking. Claimants' argument that the award is proper because net profits declined from 1961 to 1964 is not valid, since they increased from 1956 to 1961 and there is an absence of proof that this decrease was due to the taking. Moreover, profits increased from 1963 to 1964. The mere fact that customers were lost does not, *ipso facto*, establish a decrease in the value of the business, especially when contradicted by business records. That portion of the order confirming the award for business damages to Cortland O. Raymond and Ruth C. Raymond should be reversed, on the law and the facts, and that portion of the claim dismissed. That portion of the order confirming the award for indirect real estate damages to said parties should be affirmed.

## CLAIM OF RETA M. HOOD

Engaged in accounting, tax and stenography work at Walton, claimant testified that more than half of her business came from the Cannonsville area and furnished a list of allegedly lost clients. In 1962 she received an award of $2,500 for business damages resulting from the Pepacton Reservoir takings. This commission awarded $4,250. Claimant introduced in evidence her income tax returns for 1957 through 1963 and there was proof of her total receipts for 1953 through 1955. There was no proof of her net profits prior to the takings. Her gross receipts were higher after the taking than before. While her net profits were some lower in 1963 than in 1957, they steadily increased from 1957 to 1960 and claimant has in no way connected the decrease after 1960 to the takings. Claimant's point that, if the takings had not occurred, her net profits would have increased even more is not well taken (*Matter of Ford* [*Downsville*], 28 A D 2d 633, affd. 22 N Y 2d 834, *supra*). That portion of the order confirming the award for business damages to Reta M. Hood should be reversed, on the law and the facts, and the claim dismissed.

## CLAIM OF GERALD J. KERNAN

Claimant, a seller of meats at wholesale, operates from a shop at Conklin, New York, servicing different routes in the adjacent territory. He submitted a list of customers lost, which is not disputed by petitioner, together with sales slips showing the volume done with each. Income tax returns showed an average annual gross of $74,075 and a net of $4,596. The commission awarded $5,300. Claimant did an average annual gross of $5,021 in the taken area, or 6.8% of his total. This percentage of his average annual net of $4,596 was $313, which when multiplied by 5 gives a $1,565 result. Because claimant's net taxable income increased does not negate an award since this increase was due to an added route in Pennsylvania, a fact admitted in petitioner's brief. This new business developed by claimant at another place cannot be used to mitigate damages (*Matter of Board of Water Supply* [*Bishop*], 211 N. Y. 174, 186, *supra*). That portion of the order confirming the award for business damage to Gerald J. Kernan should be modified, on the law and the facts, to reduce the award to $1,565, and, as thus modified, affirmed. That portion of the order confirming the award to Camp Milling, Inc., affirmed, without costs. That portion of the order confirming the award to Arnold M. Griffin, reversed, on the law and the facts, and claim dismissed, without costs. That portion of the order confirming the award for business damages to Delaware Telephone Company, Inc., modified, on the law and the facts, to reduce the award to $14,016, and, as thus modified, affirmed, without costs. That portion of the order confirming the award for business damages to Rock Royal Cooperative, Inc., modified, on the law and the facts, to reduce the award to $31,019, and, as thus modified, affirmed, without costs. That portion of the order confirming the award for business damages and for indirect real estate damages to George F. Demeree & Son, Inc., affirmed, without costs. That portion of the order confirming the award for business damages to Carley Brook Lumber Company, modified, on the law and the facts, to increase the award to $22,842, and, as thus modified, affirmed, without costs. That portion of the order confirming the award to Edward W. Hilton, affirmed, without costs. That portion of the order confirming the award for business damages to William B. Melnick, doing business as Vogue Specialty Shop, modified, on the law and the facts, to reduce the award to $9,775, and, as thus modified, affirmed, without costs. That portion of the order confirming the award for business damages to Bassin Department Store, Inc., modified, on the law and the facts, to reduce the award to $10,115, and, as thus modified, affirmed,

without costs. That portion of the order confirming the award for business damages to Robert D. Seibert and Myrtle M. Seibert, reversed, on the law and the facts, and, that portion of the claim dismissed, without costs. That portion of the order confirming the award for indirect real estate damages to said parties, affirmed, without costs. That portion of the order confirming the award for business damages to Cortland O. Raymond and Ruth C. Raymond, reversed, on the law and the facts, and, that portion of the claim dismissed, without costs. That portion of the order confirming the award for indirect real estate damages to said parties, affirmed, without costs. That portion of the order confirming the award to Reta M. Hood, reversed, on the law and the facts, and the claim dismissed, without costs. That portion of the order confirming the award for business damages to Gerald J. Kernan, modified, on the law and the facts, to reduce the award to $1,565, and, as thus modified, affirmed, without costs. Reynolds, J. P., Staley, Jr., Greenblott, Cooke and Sweeney, JJ., concur in memorandum by Cooke, J.