352

In the Matter of ARTHUR C. FORD et al., Constituting the Board of Water Supply of the City of New York, Appellants-Respondents, Relative to Acquiring Title to Real Property for the City of New York in the County of Delaware. KYRILL DOSSEFF et al., Respondents-Appellants; LEE W. CONKLIN et al., Respondents.

Third Department, April 27, 1971.

*J. Lee Rankin, Corporation Counsel (William J. Callahan and Stanley Buchsbaum of counsel), for appellants-respondents.*

*Herman E. Gottfried* for Kyrill Dosseff and others, respondents-appellants.

*Chernin & Gold (Richard F. Kuhnen of counsel),* for Lucian Kays, respondent-appellant.

*Francis R. Paternoster* for respondents.

*Per Curiam.* This is an appeal and cross appeals from an order of the Supreme Court, Delaware County, confirming a report of Commissioners of Appraisal.

Involved in the instant appeals are 11 business damage claims and one real estate damage claim arising pursuant to section K51-44.0 of the Administrative Code of the City of New York out of the acquisition by the City of New York of real property in Delaware County for the construction of the Cannonsville Reservoir. We are constrained to observe that sections K51-15.0 and K51-16.0 of the Administrative Code were amended (see L. 1964, ch. 794) so as to authorize Special Term to modify reports of Commissioners of Appraisal. The scope of judicial review in Water Supply Act proceedings is no longer limited to the rejection of awards based on erroneous principles of law or so excessive as to shock one's conscience (*Matter of Ford* [*Siska*], 22 N Y 2d 834). Special Term has the authority, and the initial responsibility, to re-evaluate the record and make its own findings where the determination of the Commissioners is not in accord with the weight of the credible evidence. This court can modify an award as well as confirm or reject it and may thus re-evaluate the record and make its own findings, but this should be done initially at Special Term.

CLAIM OF KYRILL DOSSEFF, M.D., WILLIAM C. GALLO, M.D., AND TOM THEODOROU.

The record clearly indicates that both the gross income and net profit of Doctors Dosseff and Gallo from their medical practices increased during the period 1954 to 1963, and thus their business damage claims should have been dismissed (*Matter of Ford* [*First Nat. Bank of Downsville*], 28 A D 2d 633, affd. 22 N Y 2d 834). Any award to these claimants on the instant state of the record would have to be solely on the basis of a potential or speculative decrease and this is not permissible (*Matter of Ford* [*First Nat. Bank of Downsville*], *supra*). As we said in *Matter of Ford* (*Church*) (35 A D 2d 645, 649): " The mere fact that customers were lost does not, *ipso facto,* establish a decrease in the value of the business, especially when contradicted by business records." The fact that Dr. Gallo's income declined in the year 1961 is of no moment since it increased again in 1962 and 1963 and, except for his own naked opinion, there is no showing in the record that the decrease in 1961 was due in any way to the city's taking (*Matter of Ford* [*Church*], *supra*, p. 649).

Similarly the claim for business damages of claimant Theodorou, the operator of a soda fountain and candy store in

Deposit, should have been dismissed since the record indicates that while his gross income fluctuated during the period, his net income steadily increased except for one year, 1956, and there is nothing to show that such decrease resulted from the city's takings. In the absence of any decrease in profits, there is no basis in the record to support a finding that the value of claimant's business declined as a result of the city's construction of the reservoir (*Matter of Board of Water Supply* [*Bishop*], 211 N. Y. 174; *Matter of Ford* [*First Nat. Bank of Downsville*], *supra*; *Matter of Ford* [*Church*], *supra*; *Matter of Huie* [*Arenson-Kass*], 18 A D 2d 270). Moreover and in any event there is no evidence to support the measure of damages adopted by the Commissioners. Contrary to their finding, claimant never testified that the customers lost represented 36% of his business, and there is no other proof to support the finding that 25 customers represented a quarter of his total clientele (see *Matter of Huie* [*Arenson-Kass*], *supra*, p. 273). We note that the city has withdrawn its appeal from the award of $2,000 for indirect real estate damages and that award should, therefore, be affirmed.

CLAIM OF HIRAM B. HOWES.

Howes, the owner of two pieces of real estate in the Town of Tompkins: a 375-acre dairy farm on Bullock Hill and a parcel "something less than two acres" in the community of Trout Creek, sought damages for the reduction in value of both parcels and for business damage to the farm operation and to a farm machinery business conducted on the Trout Creek parcel.

The city concedes that the $1,500 awarded to claimant for business damage to the farm operation because he had to ship his milk a greater distance and had to travel a greater distance to purchase feed and other supplies is within the range we have approved in similar cases (see *Matter of Ford* [*Siska*], 24 A D 2d 14, 17, affd. 22 N Y 2d 834), and does not contest it, but disputes the award of $18,344 for decrease in value of the farm machinery business. The Commissioners reached this figure by finding that claimant's average net income between 1955 and 1957 was $918, that his business decreased in value to that extent by reason of the city's taking and that it would take 8 years to establish the business. To the resulting figure of $7,344 the Commissioners added $11,000 for loss allegedly suffered by claimant in disposing of his inventory. While we cannot agree with many of the city's contentions as to this claim, we must agree that claimant's average profit for the years 1955–1957

was in fact $306, not $918 and that the multiple of 8, which represents the years required to establish a business and thus the years in which a purchaser would receive no profit from his investment, is excessive considering the marginal nature of claimant's business operation (*Matter of Ford* [*Siska*], *supra*; *Matter of Ford* [*Church*], *supra*). Accordingly, the multiple should be reduced to 5 and this portion of the award reduced from $7,344 to $1,530.

As to that portion of the award as awarded claimant an additional $11,000 in business damages for the decrease in his inventory, while we cannot agree with the city's contention that *Matter of Board of Water Supply* (*Bishop*) (*supra*) precludes such an award, we find no support in the record for the Commissioners' award of $11,000 much less the $22,000 claimant seeks in this appeal. Claimant's testimony that he disposed of his inventory at " less than half " its value is entirely too vague and indefinite to support an award, especially since it is belied by his Federal income tax returns which rather indicate an inventory loss of only $3,574. Accordingly, we hold that the award for the decrease in value of inventory on hand should be reduced to the amount reported for tax purposes, $3,574, and the total business damage award reduced from $19,844 to $6,604.

The city also disputes the award of indirect real estate damage to Howes. We find, however, no more than a dispute among the real estate experts for the parties, and since the Commissioners' award is supported by the testimony of the claimant's real estate broker, there is no basis to reduce the award.

CLAIM OF H. L. ADAMS.

The Commissioners found that claimant Adams, the operator of a retail milk business in Walton since 1928, had lost 94 customers out of a total of 241, or 39% of his business, that his average net income was $5,920, 39% of which was $2,160, and that using a multiple of 8 he sustained damages of $17,280. The record, however, fails to reveal any evidence to support the figure of 241 customers and thus the 39% loss of business based thereon. In fact, the finding that the 94 lost customers represented 39% of claimant's business is contrary to the evidence introduced by claimant. Even the city's suggestion of a 26.6% loss, computed by utilizing the fact that the plant produced 6,000 quarts of which 1,600 were sold in the taking area, is favorable to the claimant since the Commissioners found that claimant did not lose all of his customers in the Cannonsville

area. The city is also willing to accept the Commissioners' finding that the average annual net profit is $5,920 even though a reduction for the value of claimant's personal services would be appropriate here (see *Matter of Ford [Greenman]*, 33 A D 2d 965). However, since there is testimony in the record that it would take 15 years to establish a retail milk business, we cannot find the multiple of 8 to be excessive as the city suggests. Accordingly, utilizing these figures the award for business damages should be reduced from $17,280 to $12,597.76, and as the city has withdrawn its appeal from the award of $4,000 for indirect real estate damage, that award should be affirmed.

CLAIM OF LEE W. AND PATRICIA CONKLIN.

Claimants, the operators of a 185-acre dairy farm in the hamlet of Stilesville, about 2½ miles from Deposit, had an increase in gross receipts and net income between 1956 and 1966 but may, nevertheless, recover for increased operating costs caused by the city's construction (*Matter of Ford [Siska]*, *supra*). However, the instant record clearly does not support the Commissioners' findings of $905 as the increased yearly operating costs involved. The increased cost of hauling milk could on the record be no more than $420 per year, as opposed to the $500 per year figure utilized by the Commissioners. And while the findings of a $30 a year increase for milk can rental and of $80 per year for increased cost of sawdust, including haulage, are supported by the record, the increased cost of fence posts could not possibly have been more than $9.40 as opposed to the $75 per year figure found by the Commissioners. Finally, the findings of an increase in butter cost and shipping and service calls are not supportable at all. The increased butter expense is a personal, not a business, expense and the city is not liable for increased household expenses. The increase in shipping and service calls is based on claimant's testimony that the stores he patronized in Cannonsville were closed but claimant's farm, while 6 miles distant from Cannonsville, was only 2½ miles from Deposit which had comparable facilities to those utilized in Cannonsville and thus there is no basis for a finding that travel costs increased. Accordingly, the record supports a finding of operating cost increase in the amount of $539.40 to which we apply a multiple of 5 (*Matter of Ford [Church]*, *supra*), as opposed to the Commisisoners' multiple of 10 which is excessive (*Matter of Ford [Siska]*, *supra*), to reach an award of $2,697. The award to claimant for business damages should, therefore, be reduced to this figure.

CLAIM OF FREDERIC C. AND DOROTHY STORRER.

The Commissioners found that claimants, the operators of a farm, sustained business damage in the amount of $1,400 per year, which they multiplied by 5 to reach an award of $7,000. There is, however, no support in the record for the finding of a yearly damage of $1,400. True, the farm profit declined $1,400 between 1958 and 1964 but not only was 1958 claimants' peak year, sales and profit having increased markedly between 1955, when the city began acquiring properties, and 1958, but more importantly, the decline in profits between 1958 and 1964 resulted from a decrease in milk production, expenses also dropped, and there is no showing that such decrease in production was caused by the city. There was no proof that claimants lost any customers or that prices declined. Nor will any shown increase in operating expenses support the $1,400 figure. Rather, there is proof of a $129 increase in hauling charges, of expenses to purchase milk cans and machinery, which assuming a 5-year useful life, amounted to $66 per year, and of increased travel expenses for shopping of $104 per year, for securing sawdust of $93.60 per year and for securing lumber of $1.80 per year, which in turn using a multiple of 5, results in damages of $1,972, to which amount the award should accordingly be reduced.

CLAIM OF LUCIAN KAYS.

Claimant, the owner of a retail furniture and appliance store in Deposit, was awarded $8,730 for business damage and $5,000 for indirect real estate damage, the latter of which the city does not contest. The Commissioners arrived at the $8,730 figure for business damage by finding that claimant lost 44 customers because of the city's actions, and that they represented $1,445 in annual sales to which a multiple of 6 was applied. We find no merit in claimant's contention that the award should be increased. Nor can we agree with the city's argument that since claimant's sales increased after the commencement of the land acquisitions our decision in *Matter of Ford (First Nat. Bank of Downsville) (supra)* requires a dismissal of the claim. Gross income did increase, but only because of a rise in prices and claimant's net income declined from an average of $14,483 before the takings began in 1953–1954 to $12,954 for the period 1956 to 1961. For this reason, we cannot say that the value of claimant's business has not decreased. However, the city properly observes that the Commissioners computed their award of the basis of the reduction in gross income rather than net

income, which clearly exaggerated the amount of damages. Since the record reveals that claimant's profit margin was 13%, he would have earned an additional $187.85 if the former customers continued to spend $1,445 annually in his store. Using a multiple of 6, to which the city has raised no objection, his business accordingly declined in value by $1,127.10 to which figure the award should, therefore, be reduced.

CLAIM OF MARGARET J. GLADSTONE.

Claimant, the operator of a bargain clothing store in Walton from June, 1954 to June, 1959, was awarded $6,340 as business damage. This amount was based on findings that her average net income for the years 1955 to 1957 was $3,170 and that lost customers represented 25% of her sales and profits and on the use of a multiple of 8. We cannot again agree with the city's contention that since claimant's sales increased after the acquisitions began, there has been no showing that the value of the business decreased and the claim should be dismissed on the authority of *Matter of Ford (First Nat. Bank of Downsville)* (*supra*). This plainly overlooks the fact that claimant's profits declined in 1958 and that she went out of business in 1959. We rather conclude that the Commissioners' findings are supportable except that claimant's average net income between 1955 and 1957 was $3,226, not $3,170, 25% of which is $806.50 per year and that the multiple of 8 is excessive considering that according to claimant's tax returns, she grossed almost $40,000 annually within 18 months after she opened. The city appears agreeable to a multiple of 5, and utilizing that and the corrected average net income, the award should be $4,032.50 to which amount it should, accordingly, be reduced.

CLAIM OF ARTHUR S. OLSON.

The Commissioners found that claimant, the operator of a gasoline service station in Walton since 1948, lost 45 customers and that his average profit declined $1,506 because of the city's takings. They multiplied this by 7 to award $10,540 for business damage. While it is true that claimant's sales and gross profits were higher after the last resident had removed than before, and that the only reason profits declined was because operating expenses had increased for which there is no proof that city was responsible (see, Seibert claim in *Matter of Ford* [*Church*], *supra*, p. 649), we do not find dismissal appropriate here since the evidence shows that claimant did suffer some business damage through the loss of customers. Claimant testi-

fied that he sold an average of 1,000 gallons of gasoline a day in 1955, but between 1963 and 1966 his sales averaged only 700 gallons per day. Even the city's witnesses conceded that claimant had lost 40 customers who represented $5,630 in sales annually. However, the Commissioners' award is grossly excessive. Their finding that claimant's annual loss was $1,506 represented nothing more than the difference between his average profits between 1955–1959 and 1962–1966, which is in conflict with their finding that the city was responsible for the loss of only 45 customers. Utilizing the approach in *Matter of Board of Water Supply* (*Bishop*) (*supra*), and assuming the 40 to 45 lost customers represented $5,360 in annual sales which in turn was 5.4% of his average sales in 1955–1956 before the taking, then, since his average profit over the entire period was $5,491, his yearly loss can be computed at $296.51, which multiplied by 5 yields an award of $1,482.55 to which amount it should be, accordingly, reduced.

CLAIM OF ERNEST A. VALENTINE.

The Commissioners found that claimant, the operator of a plumbing and heating business in Walton from 1947 until his retirement in 1962, lost 27 customers because of the city's activities, that these lost customers represented $5,465 in sales annually, or 22.5% of his average annual business. The Commissioners further found that claimant's average annual profits were $3,134, 22.5% of which was $705.15, which they multiplied by 10 to award $7,051.50 in business damage. Again this award is not supported by the credible evidence. First the record clearly establishes that only two of the customers on claimant's list moved away because of the city's construction activities and that these two customers had done a grand total of $850 in business with claimant since 1947. Moreover, even assuming all 27 customers were in fact lost, claimant's ledgers reveal that in the 13 years between 1947 and 1959, the total receipts from the 27 customers on claimant's list were $10,559, or an average of $812 per year while claimant's gross receipts between 1955 and 1959 averaged $24,020 annually, so that these 27 customers represented only 3.4% of claimant's average annual business. Utilizing this 3.4% figure, $3,154 as claimant's average profit between 1955 and 1959, based on his net taxable income, and a more realistic multiple of 6, the award would be $283.45 to which amount it accordingly should be reduced.

That portion of the order confirming the award of business damages to Kyrill Dosseff, M.D., William Gallo, M.D. and Tom

Theodorou should be reversed, on the law and the facts, and the claims dismissed. That portion of the order confirming the award to Tom Theodorou for indirect real estate damages should be affirmed.

That portion of the order confirming the award to Hiram B. Howes for business and indirect real estate damages should be modified, on the law and the facts, so as to reduce the award for business damages to $6,604 and, as so modified, should be affirmed.

That portion of the order confirming the award to H. L. Adams for business and indirect real estate damages should be modified, on the law and the facts, so as to reduce the award for business damages to $12,597.76 and, as so modified, should be affirmed.

That portion of the order confirming the award to Lee W. and Patricia Conklin for business damages should be modified, on the law and the facts, so as to reduce the award to $2,697 and, as so modified, should be affirmed.

That portion of the order confirming the award to Frederic C. and Dorothy Storrer for business damages should be modified, on the law and the facts, so as to reduce the award to $1,972 and, as so modified, should be affirmed.

That portion of the order confirming the award to Lucian Kays for business and indirect real estate damages, should be modified, on the law and the facts, so as to reduce the award for business damages to $1,127.10 and, as so modified, should be affirmed.

That portion of the order confirming the award to Margaret J. Gladstone for business damages should be modified, on the law and the facts, so as to reduce the award to $4,032.50 and, as so modified, should be affirmed.

That portion of the order confirming the award to Arthur S. Olson for business damages should be modified, on the law and the facts, so as to reduce the award to $1,482.55 and, as so modified, should be affirmed.

That portion of the order confirming the award to Ernest A. Valentine for business damages should be modified, on the law and the facts, so as to reduce the award to $283.45 and, as so modified, should be affirmed, without costs.

HERLIHY, P. J., REYNOLDS, STALEY, JR., GREENBLOTT and SWEENEY, JJ., concur.

That portion of the order confirming the award of business damages to Kyrill Dosseff, M.D., William Gallo, M.D., and Tom

Theodorou reversed, on the law and the facts, and claims dismissed, without costs. That portion of the order confirming the award to Tom Theodorou for indirect real estate damages affirmed, without costs.

That portion of the order confirming the award to Hiram B. Howes for business and indirect real estate damages modified, on the law and the facts, to reduce the award for business damages to $6,604 and, as so modified, affirmed, without costs.

That portion of the order confirming the award to H. L. Adams for business and indirect real estate damages modified, on the law and facts, to reduce the award for business damages to $12,597.76 and, as so modified, affirmed, without costs.

That portion of the order confirming the award to Lee W. and Patricia Conklin for business damages modified, on the law and the facts, to reduce the award to $2,697 and, as so modified, affirmed, without costs.

That portion of the order confirming the award to Frederic C. and Dorothy Storrer for business damages modified, on the law and the facts, to reduce the award to $1,972 and, as so modified, affirmed, without costs.

That portion of the order confirming the award to Lucian Kays for business and indirect real estate damages, modified, on the law and the facts, to reduce the award for business damages to $1,127.10 and, as so modified, affirmed, without costs.

That portion of the order confirming the award to Margaret J. Gladstone for business damages modified, on the law and the facts, to reduce the award to $4,032.50 and, as so modified, affirmed, without costs.

That portion of the order confirming the award to Arthur S. Olson for business damages modified, on the law and the facts, to reduce the award to $1,482.55 and, as so modified, affirmed, without costs.

That portion of the order confirming the award to Ernest A. Valentine, for business damages modified, on the law and the facts, to reduce the award to $283.45 and, as so modified, affirmed, without costs.